CHIEF JUSTICE WILLIAMS
delivered the opinion of the court.
S. W. Kennedy, tbe husband of appellee Sarah and the father of the other appellees, applied for an insurance on his life for five thousand dollars for his wife and children’s benefit, April 15, 1867.
The written application contains this covenant: “I further agree that the assurance proposed shall not be binding on said company until the amount of premium, as *453 stated therein shall be received by said company, or an accredited agent thereof, in the life-time and good health of said S. W. Kennedy.” The policy contains this stipulation: “Not binding on the company until countersigned by S. K. Foote or D. C. Smith, Louisville, Kentucky, and advanced premium paid.”
Applicant executed his two notes of same date of application, the one for seventy-nine dollars and ten cents, due in one year, and the other for eighty-five dollars and thirty-four cents, due on the delivery of the policy; the latter being the amount of cash premium, charge for policy, etc.
S. "W. Kennedy was taken very ill, and was in bed when the policy issued by the home company and countersigned by the Louisville agent reached the local agent who had forwarded the application; hence he would not deliver it. And Kennedy having died with that sickness, this suit was brought and judgment recovered for the sum insured.
This suit and appeal involve the single legal question whether there was an actual contract or agreement of insurance, which depends on the isolated fact whether said note for eighty-five dollars and thirty-four cents was taken as payment for the cash premium.
The local agent left blank signed papers with a gentleman living in the same town with decedent to receive applications, and deliver binding receipts when the cash premium should be paid. This friend or subagent of the local agent says, when Kennedy applied for and signed the application for insurance, he explained to hint that by paying the cash premium and getting the receipt therefor he would be insured from that day; but if he did not he would not be insured until the policy was delivered; and if in the mean time he should sicken and *454 die, he would not be insured, nor would the policy be delivered if he was not in good health when the local agent received it. To which Kennedy replied he had taken the risk all his life, and could take it until the policy arrived. That he then asked Kennedy to give his note, payable when the policy should be delivered, for the cash premium, costs of policy, etc.; to which he readily consented, and executed the note, when he again explained to Kennedy that the risk was on himself until he paid the premium and got the receipt; when Kennedy replied he did not have the money, but hoped he could get it in a few days — at least by the time the policy arrived.
This evidence is substantially corroborated by Kennedy’s attending physician, who stated that, at the request of the local agent, he went with him to Kennedy’s house after the policy had arrived, and while Kennedy was sick as aforesaid, and that the local agent told Kennedy he was placed in rather an unpleasant situation, for he could not then deliver the policy, but hoped that he would soon be justified in doing so; when Kennedy replied he should like to have the policy, but did not wish him to do anything wrong for his benefit.
This agent himself states that Kennedy said it was his own fault, for it had been explained to him that he would not be insured until the cash premium was paid. The written application and the language of the note and the non-delivery of the binding receipt and the condition of the policy all fortify this evidence.
The note is not payable at all events and on a certain day, but is payable on the delivery of the policy, and corroborates what the subagent says was the object of taking it; that is, as a memorandum of the amount of the cash premium; hence no delivery of the receipt.
Had Kennedy been in good health when the policy *455 arrived, and had failed or refused to pay this note, he could not have demanded the delivery of the policy, because it was to be paid on the delivery of the policy; and as its payment and the delivery were to be concurrent acts, neither could demand performance of the other without an offer to perform on his part. Such would be the legal import of these writings unexplained by oral testimony.
Had the note been received as an actual or in place of actual payment, it would have been payable at all events and on a certain day, and a binding receipt in all probability given.
But even if the note should presumptively be regarded as taken in place of the cash premium, this presumption can be rebutted by parol evidence, because it is but a prima fade and not conclusive presumption; and therefore, whether or not it was received in place of the cash premium, is susceptible of demonstration by parol proof. The note did not, in language or covenant, change the parol contract or obligation to pay the cash premium on the delivery of the policy, but only evidenced such contract by a writing. Had it been a commercial negotiable security it would the more strongly evidence, at least presumptively, that it was taken in place of or as the cash payment.
But neither the writings, when all taken together, nor the parol stipulations, as established by the parol proof, evidence an agreed consummated contract.
While many of the authorities recited by the counsel, and heretofore reviewed by this court, establish that a consummated unconditional parol contract to insure and issue a policy therefor can and should be executed by the chancellor when loss has occurred- before the delivery of the policy — and we regard this as a settled doctrine — yet, as *456 the foundation for such a suit, a completed contract must be shown; or, in other words, it must.be shown that the parties have agreed, and that nothing remains to be done in order to complete the agreement; and no case has been shown, or can, we apprehend, be found, where the mere execution of a note, especially such a one as this, was ever regarded as conclusive evidence that the condition of paying the cash premium had been performed; but in several instances it was proved that, by the agreement of the parties, notes for the amount were so taken, and when this appears an unconditional agreement and binding contract is shown.
In this case, however, no contract, either written or parol, is proved by which the appellant actually insured the deceased, or undertook unconditionally to issue a policy on his life:
1. ■ Because the covenant in the written application required payment of the cash premium as a condition ■precedent.
2. Because the note executed was merely the substitution of written for parol evidence of the obligation of decedent to pay said cash premium on the delivery of the policy, and neither evidenced such payment nor a waiver of such condition precedent.
3. By the written agreement the policy was not to be delivered unless the cash payment was made in the lifetime of said Kennedy, and when he was in good health.
4. This payment not being made nor tendered while Kennedy was in good health, neither he nor his widow and heirs have shown any legal right to demand a delivery of the policy.
5. As no legal right to demand the delivery of the policy has been shown, its. recitals of the payment of the cash premium can not be used as evidence to sustain *457 the suit, for it was but an escrow iu the hands of the local agent.
6. The parol evidence, so far from establishing a parol contract, or that said note was taken as a waiver of the condition precedent of paying the cash premium, negatives both.
7. The evidence that said agent by special contract had taken from others notes and other things in place of the cash premium, neither establishes a custom nor evidences that he so agreed in this case.
Wherefore the judgment is reversed, with directions to dismiss absolutely appellees’ petition.