## Yonge *v*. Equitable Life Assur. Soc. and others.

### (*Circuit Court, E. D. Tennessee.*  May 12, 1887.)

**Life Insurance—When Policy Becomes Binding—Contract with Agent.**
   A policy of life insurance, upon due application, was issued under a contract with the local agent, whereby it was substantially agreed that the agent should pay the first quarter's premium, and take the applicant's note for the same. The policy was mailed from the home office, July 28, 1885, and received by the local agent, August 5, 1885, but was never actually delivered into the possession of the applicant, who was taken ill August 6th, and died September 9, 1885. *Held* that, as between the applicant and the company, the policy became effective and binding when placed in the mail, July 28, 1885; and, if not then, certainly when it reached the hands of the agent, August 5, 1885.

In Equity.
*Creed F. Bates* and *Richmond & Clark*, for complainant.
*De Witt & Thomas*, for respondents.

Key, J. On the fourteenth July, 1885, W. W. Yonge made application for insurance upon his life for the benefit of his wife, the complainant, to the defendant company. An examination of that date, by a medical examiner of the company, was made, and the risk was reported as a good one. The papers were forwarded from Chattanooga to Louisville, Kentucky, to general agents of the company. These agents discovered an error or omission in the report of the medical examiner, and sent that paper back for correction. This delayed matters for about a week, at the end of which time the papers were forwarded to the home office in New York. The action of the home office was favorable, and a policy was duly executed and mailed to the general agents at Louisville, on the twenty-eighth day of July, 1885, and by them was mailed to the agent here, whom it reached upon the forenoon of the fifth of August, 1885. He called at the office of Yonge in the afternoon to deliver the policy, but did not find him. Next day (6th) the agent learned that Yonge was not well. The day following (7th) the agent called at Yonge's office, and learned that he was at home sick; not seriously, as was supposed. On learning the agent's business, a friend of Yonge's, and his associate in business, tendered the premium, and requested that the policy be delivered to him. The agent declined to accept the premium or surrender the policy, upon the ground that the policy did not go into effect until the first premium was paid in the life-time and good health of the applicant. Yonge's illness grew more serious, and he died upon the ninth of September, 1885. This bill was filed to enforce a surrender of the policy, and to have it paid.

In addition to the facts already stated, the proof establishes the following: The agent of the company persistently urged Yonge to make this application, when Yonge gave as a reason for not doing so that he was afraid he would not have the money to pay the first premium; or, to put the matter in the agent's language:

"Yonge hesitated to take a policy, because he said he could not meet the first premium. I then proposed to give him sixty days in which to meet his first quarter's premium, he to give me his note. He consented to this arrangement, and I made out his application, and he was immediately examined by the society's medical examiner."

According to the view I take of this case, it is not necessary to determine what effect the delays of the officers of the company have upon the rights of the parties. The proof shows that the policy arrived in the morning, and Yonge was taken sick in the afternoon of the same day. If it had not been for the week's delay caused by the mistake or omission of the company's medical examiner, the policy would have reached the hands of the applicant, no doubt, some days before his attack of sickness. Again, it is shown that the policy was mailed in New York eight days before it reached its destination. There is nothing in the proof which accounts for this delay. But the case is decided upon other grounds.

The agent who took the application states:

"When I take an application, and send it to the society, if the application is accepted, the policy is sent to me, and I must send either the money due as the premium, or return the policy; and if I take a note it is a personal matter, and the note belongs to me. The society does no credit business, and looks to me for the premium."

As between the applicant and the company, this contract was complete. There was left no act for the applicant to perform, so far as the company was concerned. The agent was to pay or account for the premium to his principal. It was as if Yonge had paid the money into the agent's hands. The consideration had moved from Yonge to the company, and no act remained but the right of the home office to reject or accept the risk. The execution of the note was a personal matter between the agent and the applicant, but not as agent. He, as agent, could not credit, so he states. The note was to be to him and for him. The company has no right to or interest in it.

May on Insurance, 64, says:

"A policy purporting to be signed, sealed, and delivered, as required by the charter, is complete and binding against the party executing it, though in fact it remain in his possession, unless some further particular act be required to be done by the other party to declare his adoption of it."

Again, the same author says, (page 71:)

"It follows from the rule that the contract is completed when the proposals of the one party have been accepted by the other, by some appropriate act signifying the acceptance; that the place of the contract is the place of the acceptance; and if an agent resident in one state, of an insurance company resident in another, forwards the requisite papers to the home office, and a policy is thereupon issued and mailed directly to the applicant, the contract is a contract made in the state where the home office is situated; and since the acceptance is the test of completion, it would seem that a transmission by mail to the agent, to be delivered by him to the applicant, would have the like effect."

The same writer says, (page 526:)

"And, if the agent be authorized to receive the premium, an agreement between the applicant and the agent that the latter will be responsible to the company for the amount, and hold the applicant as his personal debtor therefor, is a waiver of the stipulation in the policy that it shall not be binding till the premium is received by the company or its accredited agent. The same is true if the language of the policy is that the premium shall be paid before the policy shall become valid."

I conclude that the policy in this case became effective and binding upon the company when it was placed in the mail in New York, July 28, 1885. If not then, certainly on the morning of August 5, 1885, when it reached the hands of the agent here.

There will be a decree, therefore, in favor of the complainant.