(66 App. Div. 80.)

### HEWITT v. AMERICAN UNION LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department. November 13, 1901.)

INSURANCE—PAYMENT OF PREMIUM.

A general agent of a life insurance company issued a policy to its medical examiner, the agent to advance the first premium, which was to be repaid to him by the examiner from his future fees. The agent made no payment to the company, nor did he report that the premium had been paid, and the insured died, before making any payment to the agent. The contract provided that it should not go into effect until the first premium had been actually paid. *Held,* that no extension of time for the payment of the premium had been granted, and the policy was never operative.

Appeal from trial term.

Action by Mary E. Hewitt against the American Union Life Insurance Company. This action is to recover upon a policy of insurance issued upon the life of Dr. Hewitt, the plaintiff's husband. The policy is dated December 30, 1898, and is for her benefit. The insured died on the 18th day of February, 1899. The defense is that the first premium had not been paid prior to the death of the insured, and therefore that the policy had never become operative. There being no dispute over the facts, the court took the case from the jury, and subsequently rendered a decision in favor of the plaintiff. From the judgment entered thereon (70 N. Y. Supp. 1012) this appeal is taken. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, and SMITH, JJ.

Edward S. Savage and Francis Dobbins, for appellant.

George E. Green, for respondent.

PARKER, P. J. In the application made by the deceased for the insurance in question, it is expressly provided that "any policy issued hereon shall not go into effect until the first premium has been actually paid during the lifetime and good health of the insured." Such application was a part of the contract between the parties, and such provision therefore became one of the terms of the contract under which the plaintiff now claims. Although the policy was delivered to the deceased, yet, by its very terms, it was not to be operative until the first premium was paid. The mere delivery did not change its terms in this respect, because a delivery was not at all inconsistent with that provision. Indeed, such provision recognizes that a delivery might be had before the actual payment of the first premium, and still the contract not take effect. Poste v. Insurance Co., 32 App. Div. 191, 52 N. Y. Supp. 910. It is conceded that the deceased had not actually paid any part of the premium prior to his death, and evidently then the contract never became operative unless the defendant had given a credit to the deceased for such first premium, or had in some manner waived the benefit of such requirement. It is further provided in the policy itself that "no person has power to cancel, change, or add to any of the terms of this policy contract, waive forfeitures, or give credits, except the president, vice presidents, comptroller, or secretary of the company; and then only in writing." It is not claimed that either of such officers had given any credit to the deceased, or made any special contract whatever with him. Such policy was delivered to the deceased by an agent of the defendant company, one Hoag; and it is claimed that the arrangement under which such delivery was made amounts to an extension of time for the payment of the first premium by the deceased, and a waiver of the requirement that it be actually paid before the policy goes into effect. Without deciding or discussing the very serious question whether Hoag had any authority to give such credit, or make any such waiver, I am of the opinion that this judgment must be reversed, because in the arrangement under which the policy was delivered he made no attempt to do either. The only evidence we have as to what such arrangement was is found in Hoag's testimony, and it is, in substance, as follows: The insured had just previously been appointed medical examiner for the company at Hoosick Falls, on the suggestion of Hoag, who had for several years been his personal friend. On November 28, 1898, at the insurer's office, Hoag being then there, the application for insurance was signed by the insured, and, in the language of Hoag's evidence, the following is the arrangement then made:

"My statement was to the effect that, if he would take a policy for the amount applied for, that the examinations could be applied in payment of

the premium, and that I would advance the first payment for him. With that understanding, he gave me the application. In pursuance to that conversation I mailed him this policy, and the policy was delivered without any other condition except the talk I had. That is, when I mailed it there was no condition; no other or further condition made."

It further appears that 65 per cent. of this first payment—which was to be $23.29—was going to Hoag, and that after such arrangement he never saw the deceased again. Also he never paid any money whatever to the company, nor did he report to the company that the premium had been paid. Assume, for the sake of the argument, that Hoag had power to bind the company by giving credit to the insured for the first payment, I find absolutely nothing in that arrangement indicating any intent on his part to do so. He certainly did not tell the deceased that he would extend his time to make the first payment. He did not in any way assume to modify the contract. On the contrary, he recognized the obligation upon the doctor's part to at once make the first payment, and, in view of the fact that the examinations upon which the doctor was relying to obtain the funds to do so were thereafter to be made, he offered to himself "advance the first payment." Undoubtedly the policy was intended by both the doctor and Hoag to become operative as soon as delivered, but it was upon the theory that the first payment would be at once paid to the company by Hoag for the benefit of the doctor. And in this connection it is to be noticed that but 35 per cent. of the $23.29 would have to be sent to the company by Hoag. I cannot believe, from such an arrangement, that the insured supposed that he got any credit from the company. Undoubtedly he understood that Hoag would advance for him to the company; and, if Hoag had advanced, as he agreed to do, the company would have been paid, and there would have been no occasion nor opportunity for an extension of credit, nor waiver of any kind. Hoag agreed to advance to the company for the insured. Such a phrase repels the idea that the company was to do anything but receive the first payment. The company was not to advance or extend anything. Hoag was not to receive anything for the company, but he was to pay the company for the insured. When Hoag made such payment, the first premium would be paid; until he did, it was not paid. No credit was given; nothing was waived. The arrangement which the deceased made for the payment of the first premium was not carried out, and therefore the payment was never made. The fact that Hoag was an agent of the company, and might have given credit, does not change the situation, because he never assumed to act for the company in the matter of the payment in question. In that respect he acted as the friend and agent of the insured alone. It seems to me that the interpretation which the trial court has given to the transaction is not fairly deducible from the language which was then used, and that the explicit terms of a written contract should never be modified and changed by a parol agreement in which the intent to change is no more definite and precise than this.

It is urged that the act of the company in reporting this policy to the insurance department in January, 1899, as one in full force, is evidence that it had received the first payment and had given credit therefor. But the evidence shows that it had, in fact, done neither the one nor the other, and no strength is added to the plaintiff's case by that report. Poste v. Insurance Co., 32 App. Div. 189, 52 N. Y. Supp. 910.

The contract upon which the plaintiff has been allowed to recover never became operative, and hence the judgment should be reversed.

Judgment reversed on the law and the facts, and new trial granted; costs to appellant to abide event. All concur.