NEFF v. METROPOLITAN LIFE INSURANCE COMPANY.

[No. 4,885. Filed April 7, 1905. Rehearing denied June 20, 1906. Transfer denied December 20, 1906.]

1. INSURANCE.—Premiums.—Prepayment as Condition Precedent. —Unless there is an actual prepayment of the premium, a life policy providing that it shall not take effect until actual payment and acceptance of the first premium during the lifetime and good health of insured, is not enforceable by the beneficiary. p. 276.

Neff *v.* Metropolitan Life Ins. Co.—39 Ind. App. 250.

2.   INSURANCE. — *Premiums.* — *Payment.—Evidence.*—Where an insurance company's agent proposed to the assured that a policy, prepayment of the premium in cash being a condition precedent, would be issued and he could pay the premium at an agreed future time, and the assured died before the policy was delivered, and no money was ever paid by the assured or such agent thereon to the company, no payment is shown and the policy is unenforceable.   p. 277.

3.   APPEAL. — *Trial.* — *Evidence.—Exclusion.—Offer of Proof.*— A failure, upon objection to the admission of evidence, to make an offer of the proof in question, is fatal to any question thereon on appeal.   p. 278.

4.   INSURANCE. — *Policies.* — *Conditions.* — *Delivery.* — *Intent.* — The delivery of a life policy to the assured in disregard of the provisions of the policy is a material fact in determining the intent of the parties.   p. 278.

5.   SAME.—*Policies.—Delivery.—Principal and Agent.*—The delivery of a policy to an agent unconditionally, to be delivered by him to the assured, is a delivery to the assured, and such agent's failure or refusal to deliver will not prejudice the assured's rights.   p. 279.

6.   SAME. — *Policies.* — *Conditions.* — *Delivery.* — *Presumptions.*— *Principal and Agent.*—There is no presumption that a delivery of a policy by the company to its agent was for unconditional delivery to the assured, where the policy provided, as a condition precedent, the prepayment in cash of the premium and delivery during the good health of the assured.   p. 279.

From Superior Court of Marion County (63,629); *John L. McMaster,* Judge.

Action by Matilda Neff against the Metropolitan Life Insurance Company.   From a judgment for defendant, plaintiff appeals.   *Affirmed.*

*George A. Rose* and *Joseph Collier* for appellant.
*Chambers, Pickens, Moores & Davidson,* for appellee.

COMSTOCK, C. J.—Appellant brought this action against appellee to recover on a policy of insurance on the life of James H. Neff, her husband.   Appellee answered the complaint by general denial, and specially that the policy sued on was inoperative, because the premiums had not been paid or the policy delivered.   Appellant replied in general

denial. The issue was submitted to a jury, but as there was no conflict in the testimony the cause was by agreement withdrawn from the jury and submitted to the court. The court held that the law was with the defendant, and rendered judgment accordingly. The error assigned is the action of the court in overruling the motion of the appellant for a new trial.

The evidence in the case is as follows: John E. Beil was the brother-in-law of Neff, and was local agent for the appellee at Bluffton, Indiana. He had authority to solicit insurance, execute applications, deliver policies, and receive and receipt for the premiums thereon. On a day named he solicited Neff to take out a policy of insurance. Neff declined, assigning as his only reason his inability to pay the premium, and explaining that he would be able to take a policy after the first of the year, when certain funds would be at his disposal. Beil then insisted that Neff had delayed too long, and that the application should be made at once. Thereupon, on November 29, 1901, James H. Neff made a written application to the appellee for a policy of insurance upon his life in the sum of $1,000 in favor of appellant. The application was forwarded to the home office of the company, where it was received December 6, 1901. The policy of insurance in which the appellant was named as beneficiary was written and signed at the home office on December 11, and mailed to the superintendent of the company at Ft. Wayne, Indiana. It was received by agent Beil by mail at Bluffton from the superintendent at Ft. Wayne on the morning of December 16. Neff became sick in the night of December 14, and died early in the morning of the 15th. The policy did not reach Bluffton until twenty-four hours after his death. It was not delivered to the beneficiary, was retained by agent Beil, and nothing was paid upon the premium due under the terms of the policy. At the time the policy was applied for, however, Neff informed Beil, the agent, that he could

not pay the premium upon any policy until after July 1, 1902. Beil then told Neff that he would settle with the company, and Neff could repay him later. Beil never paid the premium to the company, and did not account for it in any way. The policy was retained by him for some days after Neff's death, and was then returned to the appellee's superintendent at Ft. Wayne, together with the receipt for the payment.

Appellant claims that the agreement between Neff and the agent of appellee constituted payment to and bound the insurance company. In support of this proposition the following citations are made: *Yonge* v. *Equitable Life Assur. Soc.* (1887), 30 Fed. 902; *Sheldon* v. *Connecticut, etc., Ins. Co.* (1856), 25 Conn. 207, 65 Am. Dec. 565; *Bouton* v. *American, etc., Ins. Co.* (1857), 25 Conn. 542; *Mississippi Valley Life Ins. Co.* v. *Neyland* (1872), 9 Bush (Ky.) 430; *Chickering* v. *Globe, etc., Ins. Co.* (1874), 116 Mass. 321; *Southern Life Ins. Co.* v. *Booker* (1872), 9 Heis. (Tenn.) 606, 24 Am. Rep. 344; *Home Ins. Co.* v. *Curtis* (1875), 32 Mich. 402; *Anderson* v. *Mutual, etc., Assn.* (1898), 171 Ill. 40, 49 N. E. 205; *Home Ins. Co.* v. *Gilman* (1887), 112 Ind. 7; *Terry* v. *Provident Fund Soc.* (1895), 13 Ind. App. 1, 55 Am. St. 217; *Kerlin* v. *National Accident Assn.* (1894), 8 Ind. App. 628; *Tayloe* v. *Merchants Fire Ins. Co.* (1850), 9 How. (U. S.) 390, 13 L. Ed. 187; *Western Assur. Co.* v. *McAlpin* (1899), 23 Ind. App. 220, 77 Am. St. 423; 1 May, Insurance (4th ed.), §134; 2 May, Insurance (4th ed.), §360.

In *Yonge* v. *Equitable Life Assur. Soc., supra,* a policy of life insurance was issued under a contract with the local agent whereby it was substantially agreed that the agent should pay the first quarter's premium and take the applicant's note for the same. The policy was mailed from the home office July 28, 1885, and received by the local agent August 5, 1885, but was never actually delivered into the possession of the applicant, who was taken sick August 6,

and died September 9, 1885. It was held as between the applicant and the company, that the policy became binding when placed in the mail July 28, 1885; and, if not then, certainly when it reached the hands of the agent August 5, 1885. It does not appear from the opinion that either the application or the policy contained a stipulation that the policy was to be delivered to the insured "while in health." In *Sheldon* v. *Connecticut, etc., Ins. Co., supra,* it appeared that following an application of the insured for a policy was a declaration signed by the applicant, but which was not made a part of the policy, stating that he agreed that the insurance proposed should not be binding until the premium, which was payable partly in cash and partly by note, should be received by the defendants or their accredited agent. It was held that parol evidence was admissible for the purpose of showing a waiver of such prepayment; that defendant's agent verbally agreed that the policy of insurance should take effect immediately upon approval of the application, and that the premium note might be made and the cash premium paid at some future time, at the convenience of the parties, provided such agreement was made and acquiesced in by the defendants. In such action the plaintiff claimed that the defendant's general agent for procuring applications for insurance had authority to make such agreement, which defendants denied, and the court submitted to the jury the question of such agent's authority. It was held that such course was correct. In such action the defendant claimed that it was necessary to the validity of the policy that it should be delivered to the assured, and the court instructed the jury that when an application for insurance had been approved and accepted by the defendants, or their proper agents, and a policy had been made and executed, and notice thereof given to the applicant, the contract was complete and the applicant entitled to the policy. It was held that such instruction furnished no ground for a new trial. In *Bouton*

v. *American, etc., Ins. Co., supra,* it is held that an agreement made in good faith between an insurance agent, having authority to receive an insurance premium, and the insured that the agent shall become personally responsible to his principals for the amount of such premium, and the insured his personal debtor therefor, constitutes a payment of the premium, as between the assured and the insurance company. In *Mississippi Valley Life Ins. Co.* v. *Neyland, supra,* it was held that a general agent of an insurance company, whose business it is to solicit applications for insurance and receive the first premiums, has the right to waive the payment in money, and, in lieu thereof, take a promissory note, or undertake to make the payment himself, notwithstanding a recital in the policy that it shall not be binding until the cash part of the first premium is actually paid in money. In *Chickering* v. *Globe, etc., Ins. Co., supra,* a policy issued contained a provision that if the premium should not be paid on or before the days when due, at the office of the company or to its agents, when they produced receipts signed by an officer of the company, the policy should cease. On the issue whether a premium due on a certain day had been paid to an agent of the company, there was evidence that the agent was authorized to collect premiums, and, after taking his commissions, to convert the remainder into certified checks, which were to be sent with his account to the company at regular periods; that a few days before the premium became due the agent was indebted to the firm of which A, the insured, was a member to an amount exceeding the premium; that it was a practice of the firm to pay their private debts with funds of the firm, and A's premiums had previously been so paid; that the agent stated to A that he would take care of the premium, and after the day when it became due stated to him that he had done so; that the agent had received the receipt signed by an officer of the company, and had so informed A, but retained it as a voucher against A; that the agent

sent the company after the death of A a check for the amount, including this premium with his account, and the company refused to receive it, and returned him a check for the amount of the premium, and demanded the receipt. It was held that the evidence was sufficient to warrant the jury in finding that funds which the assured had a right to control and apply to the payment of the premium had come into the hands of the company's agent before the premium became due; that the assured directed that the agent should apply so much of the money as was necessary to that payment; and that the agent did so apply, and that the jury would be warranted in finding a verdict for the plaintiff. In *Southern Life Ins. Co.* v. *Booker, supra,* it is held that a general agent in the absence of special instructions may waive cash payment, and deliver a policy, and the delivery, if unconditional and without fraud, will bind the company; that an agent, who, acting under general instructions, has charge of a company's affairs, and is authorized to deliver policies and receive premiums without instructions limiting his power, is a general agent, even though his authority be restricted to a single state. If such agent waive a cash payment, and deliver a policy unconditionally and without fraud, the contract cannot be avoided by a provision in the application that the policy shall not be binding until the cash premium is received by the company or its agent "during the lifetime of the person therein assured." In *Home Ins. Co.* v. *Curtis, supra,* it was held that where the agents of an insurance company, acting for themselves, advance the money for the premium to the company, and take the note of the insured for the amount as their own, and negotiate the same, the company may not dispute its liability on the ground that the premium has not been actually paid; also that an actual, manual delivery of the policy is not necessary; and where the agents of the company, under an agreement with the assured, hold a policy subject to the order and control of a

third person, whose mortgage interest is covered by it, this is sufficient delivery to give validity to the policy, though such third person has not actually called for or received it. In *Anderson* v. *Mutual, etc., Assn., supra,* it was held that whether the agent of a mutual life insurance association had authority to bind the association by letter to a member stating that the association had accepted such agent as surety for the payment of the member's dues is a question of fact conclusively settled by the judgment of the appellate court. In *Home Ins. Co.* v. *Gilman, supra,* it was held that where a duly authorized agent of an insurance company delivers a policy of insurance which acknowledges on its face that the premium has been paid, such acknowledgment concludes the company from thereafter denying the payment of the premium for the mere purpose of assailing the legal existence of the policy, unless the same was procured by fraud or mistake; that the agent authorized to deliver policies and receive premiums may waive the payment of the premium in cash, notwithstanding a stipulation in the policy to the contrary, and, in the absence of bad faith and collusion, a policy so delivered is enforcible. The agent of the insurance company, authorized to deliver policies and receive payment, issued and delivered a policy of insurance, there being an agreement between him and the assured that the amount of the premium fixed should be credited upon his individual indebtedness to the latter, which was done. The agent made report of the policy, and transmitted the amount of the premium to the company in due course, which the latter received and retained until suit was brought. It was held that in the absence of fraud the company is liable. In *Terry* v. *Provident Fund Soc., supra,* it was held that a payment of the first advance premium, less the soliciting agent's commission, to such agent was a payment to the company, and that the company was estopped to deny the payment thereof to the home office, such agent having waived the same by accepting the pre-

mium in cash, less his commission. In *Kerlin v. National Accident Assn., supra,* the person seeking insurance tendered to the company's soliciting and collecting agent the full amount of the first annual premium for the policy. The agent was owing the assured a sum less than the amount of the premium, and the agent told the assured to pay him (the agent) the excess of the premium over the amount owing by the agent to the assured, and he (the agent) would pay to the company the amount owing by the agent to the insured, and the insured, acting in good faith, paid the sum in excess of the debt owing by the agent to him, and relied upon the agent's statement that he would pay to the insurance company the remainder of the premium. It was held that this was a sufficient payment of the premium by the insured, and that the insured is not bound to see that the agent pays the money to the company, but he has the right to assume that it has been so paid, until he has notice to the contrary. In *Tayloe v. Merchants Fire Ins. Co., supra,* in the course of correspondence relating to the insurance of a house against fire, the insurance company having made known the terms upon which it was willing to insure, the contract was complete when the insured placed a letter in the postoffice accepting the terms. The house having burned while the letter of acceptance was in progress by mail, the company was held responsible. On acceptance of the terms proposed, transmitted by due course of mail to the company, the minds of both parties met on the subject in the mode contemplated at the time of entering upon the negotiation, and the contract became complete. In *Western Assur. Co. v. McAlpin, supra,* it is held that where an insurance agent entered into a contract to insure plaintiff's property, crediting the premium on an account which the agent owed to the plaintiff, the contract is binding on the company, and that where an agent is authorized to accept risks and collect premiums, having power to make valid contracts of insurance, he may

waive payment of the premium in cash. In 1 May, Insurance (4th ed.), §134, among other statements it is said: "If the agent request the insured to keep the money until the policy arrives, or agrees to be himself responsible to the company for the premium, accepting the insured as his personal debtor for the amount, or encourages delay," he exercises a discretion vested in him as to the mode of payment. If, however, the assured is to remit accruing premiums direct to the office, a promise of the agent who is indebted to him to pay them would not inure to the benefit of the insured. In 2 May, Insurance (4th ed.), §360, it is stated, that "if the agent be authorized to receive the premium, an agreement between the applicant and the agent that the latter will be responsible to the company for the amount and hold the applicant as his personal debtor therefor, is a waiver of the stipulation in the policy that it shall not be binding until the premium is received by the company, or its accredited agent." Citing *Sheldon v. Connecticut, etc., Ins. Co., supra; Behler v. German, etc., Ins. Co.* (1879), 9 Ins. L. J. 778; *Southern Life Ins. Co. v. Booker, supra.* And to the contrary if the application states that the agent has not power to waive payment. *Greene v. Lycoming Fire Ins. Co.* (1879), 91 Pa. St. 387. And the author states the same is true if the language of the policy is that the premium shall be paid before the policy shall become valid. *Bouton v. American, etc., Ins. Co., supra.*

Appellant further contends that the acceptance of the application at the home office, the issuing, signing, and placing of the policy in the mails directed to the agent for the ultimate purpose of delivery, constitute constructive delivery from the time the policy was placed in the mails at the home office. Citing *Kentucky Mut. Ins. Co. v. Jenks* (1854), 5 Ind. 96; *New York Life Ins. Co. v. Babcock* (1898), 104 Ga. 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am. St. 134; *Yonge v. Equitable Life Assur. Soc.* (1887), 30

Fed. 902; *Mutual Life Ins. Co.* v. *Thompson* (1893), 94 Ky. 253, 22 S. W. 87; *Phoenix Assur. Co.* v. *McArthur* (1897), 116 Ala. 659, 22 South. 903, 67 Am. St. 154; *Newark Mach. Co.* v. *Kenton Ins. Co.* (1893), 50 Ohio St. 549, 35 N. E. 1060; *Triple Link, etc., Assn.* v. *Williams* (1898), 121 Ala. 138, 26 South. 19, 77 Am. St. 34; *Long* v. *North British, etc., Ins. Co.* (1891), 137 Pa. St. 335, 20 Atl. 1014, 21 Am. St. 879; *Dailey* v. *Preferred, etc., Accident Assn.* (1894), 102 Mich. 289, 57 N. W. 184, 26 L. R. A. 171; *Porter* v. *Mutual Life Ins. Co.* (1897), 70 Vt. 504, 41 Atl. 970; *John Hancock, etc., Ins. Co.* v. *Schlink* (1898), 175 Ill. 284, 51 N. E. 795; *Hallock* v. *Commercial Ins. Co.* (1857), 26 N. J. L. 268; *Hartford Fire Ins. Co.* v. *King* (1894), 106 Ala. 319, 17 South. 107; 1 May, Insurance (4th ed.), §60.

In the *Kentucky Mut. Ins. Co.* v. *Jenks, supra,* the company's agent at LaFayette mailed the application for insurance to the company on September 27, 1850. The application was approved and the policy issued thereon and mailed to the agent on October 2, 1850. The policy was received by the agent on October 5. On September 29, 1850, the insured was taken sick, and died on October 4 following. On the receipt of the policy the agent immediately returned it by mail to the company. While the treaty for insurance was pending, and before the application was complete, the company agreed to take the first year's premium in an advertisement of their agency for six months in the insured's newspaper at LaFayette, and accordingly the agent, in August, 1850, furnished to the applicant the advertisement, which was published in the paper continuously thereafter, as directed by the agent, for six months. The price of the advertisement fell short of the first year's premium forty-five cents. The court held that the contract of insurance was at least complete on October 2, 1850, when the application was approved and the policy was mailed to the agent. In *New York Life*

*Ins. Co.* v. *Babcock, supra,* it is held that a contract of life insurance is consummated upon the unconditional written acceptance of the application for insurance by the company, to which application is made; that actual delivery of the policy to the assured is not essential to the validity of the contract of life insurance unless expressly made so by the terms of the contract. The receipt by an agent from his insurance company of a policy to be unconditionally delivered by him to the applicant is in law tantamount to a delivery to the insured, although the agent never surrenders possession of the policy, and although its delivery to the applicant is by contract made essential to its validity. In *Mutual Life Ins. Co.* v. *Thompson, supra,* it is held that where a policy of life insurance is placed by an agent of the company in the hands of a broker, through whom the application had been received, to be by him delivered to the insured, the contract must be regarded as completed, and binding on the parties, although the applicant died before the policy was delivered to him, the agent having received and appropriated to the use of the company the premium which was paid by the insured to the broker. In *Phoenix Assur. Co.* v. *McArthur, supra,* it is held that whether or not an insurance policy has been delivered, so as to give it binding effect, does not depend upon its manual possession by the assured, but rather upon the intentions of the parties as manifested by their acts or agreement; and where the policy is executed, and the agent of the company notifies the assured that it has been issued, and is in his possession for him, and the premium is paid by the assured to the agent, it will be considered that there had been a delivery of the policy, so as to give validity and binding effect thereto. In *Newark Mach. Co.* v. *Kenton Ins. Co., supra,* in determining whether there has been a delivery of the policy, effect will be given to the intention of the parties; and where the terms of an executed policy have been unconditionally accepted by the insured, and the

policy has thereafter been treated as in force by the parties, its delivery will be regarded as complete, though it remain in the hands of the insurer's agent. In *Triple Link, etc., Assn.* v. *Williams, supra,* the deposit in the postoffice by an insurance company of a policy, with postage prepaid, directed to the insured at his place of residence, is a delivery to the insured. In *Long* v. *North British, etc., Ins. Co., supra,* it is held that a provision in a policy making actual payment of premium a condition of its validity may be waived by the issuing agent so far as to give time for such payment, notwithstanding a prohibition in the policy of any waivers of conditions by agents, where the established course of dealing between the parties has been for the agent to extend such credits, he becoming the accepted debtor of the company for the premium, and the assured becoming his debtor therefor. Citing *Lebanon Mut. Ins. Co.* v. *Hoover, Hughes & Co.* (1886), 113 Pa. St. 591, 8 Atl. 163, 57 Am. Rep. 511. It was held in *Porter* v. *Mutual Life Ins. Co., supra,* that a life insurance policy becomes a complete contract when issued in accordance with its terms for unconditional delivery to the assured, though the latter does not receive possession of it or know of its receipt by the agent. In *John Hancock, etc., Ins. Co.* v. *Schlink, supra,* the court held that a provision in a life insurance policy that it shall not take effect "until delivered and the first premium thereon paid during the lifetime and good health of insured" may be waived by the agent, and the policy be delivered and the premium accepted with knowledge that the insured is ill at the time. In *Daily* v. *Preferred, etc., Accident Assn., supra,* it is held that the fact that an accident policy sent through the mails does not reach its destination until after death of insured does not prevent recovery on the policy, the contract being complete when the policy is accepted and credit given for the premium. In *Hallock* v. *Commercial Ins. Co., supra,* the court holds that the acceptance of a pro-

posal to insure for the premium offered is the completion of a negotiation, and after the policy has been forwarded to the agent for delivery the contract cannot be rescinded without the consent of the party insured. And if the premium is tendered to the agent when application is made and he does not receive it but says he will consider it as paid and authorizes the applicant to keep the money until the policy arrives the contract will be as binding upon the company as if the money was actually paid over to the agent. In 1 May, Insurance (4th ed.), §60, the author says: "To constitute a delivery of a policy it is not necessary that there should be an actual manual transfer from one party to the other. The agreement upon all the terms and the issue and transmission to the agent of a policy in accordance therewith, for delivery without conditions is tantamount to a delivery to the insured." Cites, among other cases, *New England, etc., Ins. Co.* v. *Robinson* (1865), 25 Ind. 536.

In support of the judgment of the trial court appellee contends that the premium was not paid, maintaining said proposition by the following citations: *Hoffman* v. *John Hancock, etc., Ins. Co.* (1875), 92 U. S. 161, 23 L. Ed. 539; *Lycoming Fire Ins. Co.* v. *Storrs* (1881), 97 Pa. St. 354; *Ormond* v. *Fidelity Life Assn.* (1887), 96 N. C. 158, 1 S. E. 796; *St. Louis, etc., Ins. Co.* v. *Kennedy* (1869), 6 Bush (Ky.) 450; *Buffum* v. *Fayette, etc., Ins. Co.* (1862), 3 Allen (Mass.) 360; *Poste* v. *American, etc., Ins. Co.* (1898), 52 N. Y. Supp. 910; *Dunham* v. *Morse* (1893), 158 Mass. 132, 32 N. E. 1116, 35 Am. St. 473; *Continental Life Ins. Co.* v. *Willets* (1872), 24 Mich. 268; *Hawley* v. *Michigan, etc., Ins. Co.* (1894), 92 Iowa 593, 61 N. W. 201; *Reese* v. *Fidelity, etc., Assn.* (1900), 111 Ga. 482, 36 S. E. 637; *Tomsecek* v. *Travelers Ins. Co.* (1902), 113 Wis. 114, 88 N. W. 1013, 57 L. R. A. 455, 90 Am. St. 846; *Hewitt* v. *American, etc., Ins. Co.* (1901), 73 N. Y. Supp. 105.

In *Hoffman* v. *John Hancock, etc., Ins. Co., supra,* it was held that an agreement between the agent of the insurance company and an applicant for insurance, whereby the former, without authority from the company, accepted, in satisfaction of a premium payable in money, articles of personal property, was a fraud upon the company, and no valid contract against it arises therefrom. In *Lycoming Fire Ins. Co.* v. *Storrs, supra,* the opinion holds that where an insurance company defends against the payment of the amount of a policy of insurance on the ground of nonpayment of a premium, the assured cannot set up as excuse for nonpayment the fact that he agreed with an agent of the company that the latter should credit the premium on a debt owed the assured. In *Ormond* v. *Fidelity Life Assn., supra,* it is held that where an application for a life insurance policy declares on its face that payment of the premium is a condition precedent to the issuing of the policy, the policy is not in force until the premium is actually paid, and, where the prepayment of a premium is made an essential part of the agreement, no agent can dispense with the requirement; so, where the assured made application for insurance, and the application set out that the policy would not take effect until the premium was paid, but the agent of the insurer told the applicant that he could pay the premium either at that time or when the policy was delivered, and the applicant elected to pay at the latter time, but died before the policy was received, it was held that the policy never took effect, and the insurer was not liable. In *St. Louis, etc., Ins. Co.* v. *Kennedy, supra,* the application contained this covenant: "I further agree that the insurance proposed will not be binding upon the company until the amount of the premium stated therein shall be received by said company or agent in the lifetime and good health of said Kennedy." The policy contained the stipulation "not binding on the company until countersigned by S. K. Foote or D. C.

Smith, Louisville, Kentucky, and advance premium paid." Simultaneously with his application, Kennedy executed his two notes, one due in one year and the other due on delivery of the policy, the latter note being for the amount of the cash premium charged for policy, etc. The policy, after being duly countersigned, reached the local agent after Kennedy became sick, of which sickness he died, and the policy was never delivered and the advance premium was never paid, nor payment thereof tendered. The court held that there was no consummated contract of insurance for the reason that the advance premium was not paid. The note for the advance premium was executed and delivered by the applicant and received by the agent of the company as a memorandum, merely, and not as a payment of the cash premium or a waiver of the condition precedent. In *Buffum* v. *Fayette, etc., Ins. Co., supra,* it was held that, if the by-laws of a mutual insurance company provide that "each person, before the policy shall be binding on the company, shall pay to the treasurer or agent such premium and make such deposit as the directors shall determine," the company is not rendered liable on a policy which is executed but not delivered, and for which no premium has been paid, by an oral promise of their treasurer to an applicant for insurance that if anything should happen, he would see the premium paid, or that he would take it upon himself to keep the policy good. In *Poste* v. *American, etc., Ins. Co., supra,* the application, made a part of the contract, provided that any policy issued thereon should not go into effect until the first premium had been actually paid during the lifetime of the insured, and that only certain named officers could alter the contract. The policy was delivered to the insured, an attorney of the insurance company, some four months before his death, but no premium was paid. The complaint on the policy alleged a special agreement waiving payment of premium, which was only proved by showing that the company in its report

to the insurance department, shortly before the death of the insured, reported the policy under the head of "Policies at present in force." The company showed, however, that they reported such policies as were outstanding at the date of the report, subject to correction by later reports if they lapsed in the meantime. Held that no cause of action existed in favor of the beneficiary. In *Reese* v. *Fidelity, etc., Assn., supra,* where the application for a policy for life insurance and the policy itself both stipulated in effect that the policy should not become binding upon the association issuing it until the first premium had been actually received by the association or its authorized agent during the good health of the applicant, and that no agent of the association should have power to make, alter, or discharge contracts or grant credit, and that there should be no alteration of the terms of the contract unless said alteration should be in writing and signed by the president of the association, it was held that the actual payment of the first premium during the good health of the applicant was a condition precedent to the liability of the association, and that no agent of the association could waive such condition. In *Tomsecek* v. *Travelers Ins. Co., supra,* the policy provided that it should not take effect unless the first premium was paid while the insured was in good health, and the agent of the insurer agreed to accept goods from the insured's meat market in payment of the premium, but insured died before any such goods were delivered to the agent. The agent's agreement was beyond the scope of his authority, and was not a waiver of the condition as to payment. The court said in the course of the opinion: "Many authorities are cited to our attention to the effect that possession of a policy by the assured at the time of his death *prima facie* establishes all conditions necessary to its having taken effect as a binding insurance contract in his lifetime, notwithstanding it contains a stipulation that it shall not take effect unless the first premium is paid while

the assured is in good health; that if such payment was not in fact made, a waiver thereof will be presumed in the absence of evidence to the contrary. Some of such authorities hold to rather an extreme doctrine when applied to a policy which does not contain a receipt for payment of the first premium and indicates that an independent instrument, evidencing such payment, is to be delivered to the assured upon such payment being made, as in this case. * * * The trial court applied the doctrine of such authorities to this case, and in that, as it seems, committed error. The court went further, not only holding that the agent waived and had implied authority to waive payment of the first premium while the applicant for insurance was in good health, but waived and had authority to waive payment of such premium in money, and to make an agreement, binding on appellant, that a payment might be made by applying the amount of the premium on the agent's indebtedness for meat and as a credit entitling him to further delivery of meat. * * * The jury found that the agent agreed to accept his own indebtedness for meat as part payment for the first premium and to take meat for the balance thereof. It is undisputed that such agreement was never carried out by the insured so as to obligate the agent to pay the company. Neither the company nor the agent received pay for the first premium. There is no analogy between this case and one where the agent merely agrees to give the applicant for insurance time to make the first payment, or agrees that he will advance the amount of the first payment himself, and actually does advance it, or agrees to charge himself with the first premium in his account with the company, according to a custom of doing business between himself and his principal, thereby becoming liable to the company." In *Hewitt* v. *American Union Life Ins. Co.*, 73 N. Y. Supp. 105, a general agent of a life insurance company issued a policy to its medical examiner, the agent to advance the first premium, which

was to be repaid to him by the examiner from his future fees. The agent made no payment to the company, nor did he report that the premium had been paid, and the insured died before making any payment to the agent. The contract provided that it should not go into effect until the first premium had been actually paid. It was held that no extension of time had been granted, and the policy was never operative.

In *Dunham* v. *Morse, supra,* A, in order to obtain insurance upon his life at once, instead of waiting for the action of the insurance company on his application, gave a promissory note for the amount of the premium payable to B, an agent of the company, who signed and delivered to A a contract purporting to give such insurance, which was to be subject to certain conditions printed on the back, one of which was that the contract was not valid unless the premium was "actually paid in cash," and another of which was that none but certain designated officers of the company had authority to alter the contract. B charged himself with the amount of the premium, and gave the company credit for it on his books, but he did not pay the company any cash on account of this insurance until long after the policy had been tendered to A and the contract had been repudiated by him. B had been accustomed to keep money received for the company in his private bank account, with the knowledge and consent of the company; but the company had no knowledge that A had not paid his premium in cash, and did not waive the condition printed on the back of the contract. Held, in the action by B against A on the note, that the note was without consideration. In *Continental Life Ins. Co.* v. *Willets, supra,* the defendant in error, who was plaintiff below, brought action upon a policy of insurance upon the life of her husband, William J. Willets, in her favor. The issuance of the policy by the company and its transmission to their general agents in Detroit, in whose hands it was at the

time of the death of Willets, were not in dispute. The application for a policy contained the following clause, immediately preceding the signature of the applicant: "It is hereby declared * * * also that the policy of insurance hereby applied for shall not be binding upon the company until the amount of all premium or premiums, as stated therein, which shall be due or overdue shall be received by said company, or by some person authorized to receive the same, and during the lifetime of the party herein insured." It was claimed by the defendant that the first premium upon the policy had never been paid by the insured, and consequently the plaintiff had never become entitled to the policy, or to maintain action upon it. The plaintiff claimed, on the other hand, that all of the first premium except $12 had been paid in a promissory note against Wilkey, delivered to and accepted by Gray, who the plaintiff claimed had authority to receive the same as payment and with whom plaintiff also claimed there was an understanding express or implied for some credit for the remaining $12. Gray, it appeared, was a subagent, employed by the general agent of the defendant at Detroit as solicitor to deliver policies and collect premiums. There was no dispute that when the policy in question was sent on by the company to their general agents it was delivered to Gray, to collect the premium and then to deliver the policy to the insured; that he then called upon Wilkey, and, on the latter expressing his inability to pay, he took from him the Wilkey note. The case was given to the jury by the circuit judge upon the theory that under the undisputed facts of the case Gray had authority to make the arrangement claimed by the plaintiff to have been made, and that the question for the jury, therefore, was whether he did make it or not. The charge was: "If the note for $42 given in evidence was delivered to, and accepted by, Gray as payment in part of that portion of the premium payable down, and there was an understanding, express or

implied, between Gray and William J. Willets that the residue of said portion of the premium should be paid to said Gray at some future time, then Gray at once became indebted to his principals, Tenwinkle & McCune, for such premium, and they to the defendant, and as between plaintiff and defendant said premium was paid and the policy delivered to her." There was judgment for the plaintiff. Upon appeal the judgment was reversed. The Supreme Court by Cooley, J., said: "If Gray could bind the company by such an arrangement, it must be either because expressly authorized, or because the course of business of the defendant was such as to warrant an implication of authority upon which third persons would be authorized to act. A subagent, employed by the agent of an insurance company to solicit applications for insurance, collect premiums and deliver policies, has certainly by virtue of such employment no general authority to give credit or receive anything but cash in payment. This is too plain to require the citation of authorities. * * * To support the theory of the plaintiff, there should have been some evidence showing, or tending to show, that the subagent was allowed at his option, to substitute a personal liability of his own to the company in the place of the money which he was to collect as premium, the company being content to look to him as its debtor for any amount which he saw fit to arrange otherwise than by actual payment in cash, with the parties applying for insurance. For the purpose of disposing of the case on this record, it is sufficient to say that there is no such evidence. The company appears to have taken care to provide against any implication of any such understanding; requiring, as they appear to have done, an express stipulation by the applicant for insurance, that the policy should not have force until the premium was actually received. * * * It is very true that if he saw fit to pay over to his principals the premium upon a policy they did not inquire whether he had actually re-

Neff *v.* Metropolitan Life Ins. Co.—39 Ind. App. 250.

ceived it or not; nor had they any occasion to. If a collecting agent, for any reason of his own, pays to his principal the amount of the demand which he has not collected, it would be a violent inference from that fact that he was authorized to discharge other demands without payment. The implication, on the other hand, would be that the principal insisted upon strict payment always, and did not consent in any case to leave matters open to await the result of private arrangements between the debtor and the agent, with which the principal was not concerned, and which he did not care to inquire into." In the case at bar, after issuing the policy, the company mailed it to its district agent, and the district agent to the local agent. It remained within the physical control of the insurance company. Its conditions were unfulfilled by the assured. As indicating the understanding of the parties it is significant that the local agent did not deliver it to the beneficiary, and the beneficiary did not demand it of the agent. In *Hawley* v. *Michigan, etc., Ins. Co., supra,* A induced B to apply for life insurance under agreement to advance the premium and take the policy as security for the advance. A held a note against an agent who had authority to take applications and collect premiums and deliver policies upon the payment of premiums. He arranged with this agent to procure said policy upon the life of said B, and that the premium should be paid by an indorsement upon said note. A policy was issued, which contained a clause that no liability should arise unless the premium was paid and the policy delivered in the lifetime of the insured. It was delivered to said insurance agent. He sent it to a third person, with instructions not to deliver it until the indorsement was made upon his note. The indorsement was made, and the policy delivered to A after B died. Held, that there was neither a payment nor a delivery, and no liability upon the policy. Appellee further contends that the facts do not show waiver of payment of the premium,

citing the following cases: *Northern Assur. Co.* v. *Grand View Bldg. Assn.* (1902), 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; *Willcuts* v. *Northwestern, etc., Ins. Co.* (1882), 81 Ind. 300, 308; *Reese* v. *Fidelity, etc., Assn., supra; Hartford Fire Ins. Co.* v. *Wilson* (1903), 187 U. S. 467, 23 Sup. Ct. 189, 47 L. Ed. 261; *Fidelity, etc., Ins. Co.* v. *Lowe* (1903), 4 Neb. (unofficial) 159, 93 N. W. 749; *Liverpool, etc., Ins. Co.* v. *T. M. Richardson Lumber Co.* (1902), 11 Okl. 579, 69 Pac. 936; *Atlas Reduction Co.* v. *New Zealand Ins. Co.* (1903), 121 Fed. 929. In *Northern Assur. Co.* v. *Grand View Bldg. Assn., supra,* it is held that where waiver is relied upon the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition. Where the waiver relied on is the act of an agent it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent. In *Hartford Fire Ins. Co.* v. *Wilson, supra,* the policies stipulated that no agent could waive their conditions, except such as by their terms might be waived by indorsement. Held, that the delivery of the policies was only conditional, and, as there was a failure of the conditions, they had no binding force at the time of the fire; also that the limitation on the agent's power to modify their conditions referred to his power after they became valid contracts, and did not forbid his stipulating for a conditional delivery. *Fidelity, etc., Ins. Co.* v. *Lowe, supra,* held that an agent who is authorized to receive and fill applications, binds the company by false answers written by him in such applications, when informed as to the facts regarding the title. The case is not affected by the fact that the company is mutual. The applicant was not a member until his policy was issued. In taking the application the agent deals with a stranger, not with a mem-

ber. The applicant was entitled to assume that the agent had done his duty, and could not be bound by notice of his restrictions, which only came to him through the policy. *Liverpool, etc., Ins. Co.* v. *T. M. Richardson Lumber Co., supra,* decides that the execution of a contract in writing supersedes all preceding oral negotiations which accompany the execution of the instrument; also, where the terms of a written contract are clear, plain, and explicit, parol testimony is not admissible to change or vary its terms. An applicant who accepts a policy, the provisions of which are free from ambiguity, is chargeable with the knowledge of its terms and legal effect. It is his duty to read and know the contents of the policy before he accepts it, and where he fails to do so he is estopped from denying knowledge of its terms and conditions, unless he alleges and proves that by some trick of the other party he was induced not to read the policy. *Atlas Reduction Co.* v. *New Zealand Ins. Co., supra,* holds that where an insurance policy provided that its conditions should not be waived unless the waiver was indorsed thereon or attached thereto, and also contained a clause that as to any personal property it should be void if the property became encumbered by a chattel mortgage, unless otherwise provided by an agreement indorsed thereon, such conditions were not waived by an indorsement making the loss payable to two persons named, who were in fact mortgagees, as their interests might appear, but which did not contain any reference to the mortgage nor show that the insurer had any knowledge of the existence of a mortgage upon the personal property. In *Willcuts* v. *Northwestern etc., Ins. Co., supra,* at page 308, Mitchell, J., speaking for the court says: "It is settled that a waiver of a condition of a policy can only be made by an agent possessing competent authority. *Franklin Life Ins. Co.* v. *Sefton* [1876], 53 Ind. 380. We think the case cited must be regarded as declaring that a mere local agent of an insur-

ance company cannot waive any of the material conditions written in the policy."

The policy in suit contains the following condition:

"The contract between the parties hereto is completely set forth in this policy and the application therefor taken together, and none of its terms can be varied or modified, nor any forfeiture waived, or premiums in arrears received except by agreement in writing signed by either the president, vice-president, secretary, or actuary, whose authority for this purpose will not be delegated; no other person has or will be given authority."

Under this provision the company, in the absence of any testimony that it accepted money from Beil, or looked to him for its payment, would not be bound by the arrangement claimed to have been made.

In support of the proposition that the policy was not delivered, appellee cites the following cases: *Union Cent. Life Ins. Co.* v. *Pauly* (1893), 8 Ind. App. 85; *Oliver* v. *Mutual Life Ins. Co.* (1899), 97 Va. 134, 33 S. E. 536; *Hawley* v. *Michigan, etc., Ins. Co., supra; Misselhorn* v. *Mutual, etc., Assn.* (1888), 30 Mo. App. 589; *Reese* v. *Fidelity, etc., Assn., supra.* In *Oliver* v. *Mutual Life Ins. Co., supra,* an applicant's express agreement in his written application that the policy should not take effect until the first premium was paid and policy delivered during his continuance in good health, created a condition precedent to the company's liability, notwithstanding the soliciting agent verbally agreed, in the presence of a general agent of the company, that the policy would be delivered as soon as issued, and the company delayed delivery after it was issued to determine whether a material warranty given in the application was false, it being considered that the soliciting agent had no authority to bind the company to issue a policy or make a binding contract of insurance between it and the applicant, and it not appearing that the company unnecessarily delayed

delivery in bad faith. In *Misselhorn* v. *Mutual, etc., Assn., supra,* the court held that, whatever may have been the previous oral negotiations between the parties, when the written application for insurance provided that all the terms therein should be a part of the contract, and contained a further provision that "under no circumstances shall the certificate hereby applied for become binding until the actual payment to, and acceptance of the first annual dues by, the association, and actual delivery of the certificate to the applicant, with a receipt for the payment of the first annual dues, signed by the secretary or treasurer of the association, during the lifetime of the applicant," and when the certificate or policy of life insurance itself contained a like stipulation, there can be no recovery on such certificate or policy if the person assured was dead when the same was written and transmitted for delivery. In *Russell* v. *Prudential Ins. Co.* (1903), 176 N. Y. 178, 68 N. E. 252, a written application for life insurance provided that the application should become a part of the contract for insurance, and that the policy should be accepted subject to the conditions and agreements contained in the application, and that it should not take effect until it was issued and delivered by the company, and the first premium paid thereon in full. The provision was carried into the policy. Held, that the applicant must be presumed, in the absence of fraud, to have read or had read to him the application, and to have known that the policy could not take effect until the premium was paid, so that the policy would not be binding until such payment, and was chargeable with the notice that the agent could not without express authority waive such payment. Where, in an action brought on a policy of insurance providing that it should be invalid until payment of the first premium is made in full, it appeared that when the policy was delivered to the insured a gen-

eral agent of the company extended the time of payment for thirty days from delivery, stating that the insurance would go into effect at once, and before the premium was paid, and within four days, the insured died, the beneficiary cannot recover without proof of the agent's express authority to waive the payment. In *Union Cent. Life Ins. Co.* v. *Pauly, supra,* negotiation for a policy occurred about September 28. The insured was notified by postal card of the arrival of his policy. Two or three weeks thereafter a son of the insured called for the policy, and tendered the amount of the premium, the insured being sick November 21 and 28, and still sick and unable to go and get his policy on December 6, the date of tender of the premium. It was held that the agent was justified in refusing to consummate the contract, and, upon the death of the insured, in returning the policy to his principal. In the same case it is said that where there has not been either payment of the advance premium as required by the policy, or delivery of the policy to the insured, it requires strong proof to show a 'binding contract.

The cases cited indicate the conflict in the holdings of various courts. Some of the cases were decided upon facts quite dissimilar to those in the case at bar.

1. Some of those cited by appellant are upon the ground that credit was extended by the agent to the applicant. Since the decision in *Condon* v. *Connecticut, etc., Ins. Co.* (1856), 25 Conn. 207, 65 Am. Dec. 565, numerous opinions have taken a view contrary to the one there expressed. In that case a custom existed between the company and the agent to charge the amount of the first premium to the agent when the policy was forwarded to him for delivery, and for the agent to make settlement from time to time, and remit money on account. Such custom is not shown in this case. As between the insured and the defendant company there was no exten-

sion of time of payment of the premium. No money passed between the local agent and the insured. The letter from the superintendent at Ft. Wayne to the local agent at Bluffton, transmitting the policy, directed him to "deliver at once, and account for the premium to us on Wednesday." There is nothing in this to indicate a credit or waiver of payment of the first premium, or knowledge of an agreement as to either. There is no evidence that Beil charged himself with any amount or accounted for any sum to the company. As to the arrangement for the payment of the premium, Beil said that he "would settle with the company," and that Neff "could pay him later."

The terms of the contract required actual payment of the premium to, and its acceptance by, the company during the lifetime and good health of the insured.

2. The application, which, by the terms of the policy, is made a part thereof, contains the following clause:

"It is hereby declared, agreed, and warranted by the undersigned, * * * that the policy hereby applied for, if issued, shall not be in force until the actual payment of the premium to, and its acceptance by, the company during the lifetime and good health of the person on whose life insurance is applied for." The policy itself contains the following condition:

"First. No obligation is assumed by this company upon this policy until the first premium has been paid, and the policy duly delivered, nor unless upon the date of delivery the insured is alive and in sound health. * * *

Fifth. Premiums are payable at the home office in the city of New York, but at the pleasure of the company suitable persons may be authorized to receive such payments at other places, but only on the production of the company's receipt signed by the secretary, and countersigned by the persons receiving the payments. All premiums are considered payable yearly in advance, but when paid in semi-annual or

quarterly instalments, that part, if any, which remains unpaid at the maturity of the policy shall be deducted; but this provision does not affect the provisions of the third paragraph respecting forfeiture for nonpayment of instalment of premiums."

Beil never received any money from Neff; the company never received any from Beil; the advance premium was never paid, nor payment tendered. Beil was asked why he did not pay the money to the company, to which question an objection was sustained, appellant claiming that this was error; but, as there was no offer of proof at the time, error cannot be predicated upon such ruling. *Breedlove* v. *Breedlove* (1901), 27 Ind. App. 560; *Gunder* v. *Tibbits* (1899), 153 Ind. 591.

Had the policy been by the company manually delivered to the insured even in sickness, or to the beneficiary, without the payment of the premium, the court would consider the fact of delivery as an element in the intent of the parties. *Penn Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379. In *Trustees, etc.,* v. *Brooklyn Fire Ins. Co.* (1859), 19 N. Y. 305, it is said: "A provision in a policy already executed and delivered so as to bind the company, declaratory of the condition that premium must be paid in advance, manifestly has no effect except to impart convenient information to persons who may wish to be insured." In *VanSchoick* v. *Niagara Fire Ins. Co.* (1877), 68 N. Y. 434, it is said: "It has been thought that the fact, that the insurer delivered to the insured the written contract, as a consummated agreement between them, and did not then exact present payment of the premium as a necessary precedent to delivery, was too plainly in contradiction with the condition for prepayment, for it to be supposed that it was meant by the insurer, or supposed by either party that it was intended to make that condition a potent part of the

contract. Such a provision, it is said, could have no effect upon the delivered and perfect contract in which it was contained."

Delivery to an agent of a policy to be unconditionally delivered by him to the applicant is in law, as has been said, tantamount to a delivery to the insured, although the agent never parts with possession of the policy, and although its delivery to the applicant is by contract made essential to its validity. This may well be, for the agent is subject to the orders of his principal. By his act of omission or commission he could not defeat the rights of the insured. The arbitrary or negligent failure to deliver a policy would not render it ineffective. An agent, in disregard of the instructions of his principal, could not defeat the rights of a third party, or annul a contract entered into. Nor could an agent bind his principal by disregard of the terms of the contract when the party seeking to take advantage of the contract knew of the violation of its terms by the agent.

There could be no presumption in the absence of evidence that the principal had instructed an agent to deliver a policy without the payment of the first premium, or while the applicant was sick, in plain violation of the stipulations of the policy and of the application.

The case of *Reserve Loan Life Ins. Co.* v. *Hockett* (1905), 35 Ind. App. 89, is like the case at bar in some of its features. The opinion ably discusses the subject of conditions in applications for policies of insurance. *Prudential Ins. Co.* v. *Sullivan* (1901), 27 Ind. App. 30, *Home Ins. Co.* v. *Gilman* (1887), 112 Ind. 7, and *Terry* v. *Provident Fund Soc.* (1895), 13 Ind. App. 1, 55 Am. St. 217, cited by appellant upon the question of waiver are distinguishable from the case at bar.

We have not referred to every case cited by counsel, but have read them all and many others not cited. That there

is a conflict of the courts upon the questions here involved is not to be denied. The weight of the authorities is with the appellee. The conditions of the contract have not been performed, nor their performance waived. No consideration has been paid nor tendered.

Judgment affirmed.