LUCY F. WYMAN, as Administratrix, etc., Respondent, *v.* THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY, OF HARTFORD, CONNECTICUT, Appellant.

In an action upon a policy of insurance on the life of W., non-payment of premium, due October 25, 1884, was pleaded as a defense. The policy contained a clause declaring that the agents of the company "have no power to waive or postpone payment of premium, or to accept payment after it becomes due." It appeared that on July 1, 1884, W. wrote to defendant as to how large a paid-up policy it would give him. Defendant answered stating the then present value of the policy, and what it would be in October, adding that G., its general agent, "will give you further information, or you can write here." The day the premium

became due a son of W. called on G. and told him his father had con-
cluded to take a paid-up policy, and then, supposing that a payment of
the premium was a necessary step, offered to G. the amount in cash. G.
said that payment of the premium was not necessary to entitle W. to a
paid-up policy, but advised the continuance of the existing policy, and
suggested the witness should talk the matter over with his father and let
him decide, adding that he could come in and pay the premium at any
time within a week or ten days. On November 3d, G., describing him-
self as "manager" and his office as a "branch office," acknowledged the
receipt of the policy in question "to be replaced by paid-up policy in such
amount as has been agreed upon," and added: "Time extended thirty
days in which to reach a decision with regard to taking paid-up policy."
It also appeared that G. had many times accepted premiums from the
assured, after their maturity, under circumstances which fairly charged
defendant with knowledge of the fact, and made their acceptance of the
money a ratification of waiver by the agent. W. died November 8th,
and two days later his son paid to G. the premium, receiving a receipt
therefor. The trial court directed a verdict for defendant. *Held*, error;
that the assured was authorized in assuming that G. had authority to
continue and carry out the negotiation for an exchange of policies as
broad and effective as that of the home office, and had special authority
so far as this policy was concerned to waive prompt payment; that the
default was occasioned by the acts of such agent; and that it could not
be said as matter of law that there was no waiver.

(Argued January 15, 1890; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made July 9, 1889, which reversed a judgment in favor of
defendant entered upon a verdict directed by the court, and
reversed an order denying a motion for a new trial.

The nature of the action and the facts are sufficiently stated
in the opinion.

*Thomas Thacher* for appellant. Plaintiff failed to prove a
cause of action. (Code, § 533; *Wyman* v. *P. M. Ins. Co.*,
45 Hun, 184; *Roehner* v. *K. L. Ins. Co.*, 63 N. Y. 164;
*Wheeler* v. *C. M. L. Ins. Co.*, 82 id. 543; *Howell* v. *K. L.
Ins. Co.*, 44 id. 281; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 id.
328, 334, 335; *Attorney-General* v. *C. L. Ins. Co.*, 93 id. 73;
*Sidenberg* v. *Ely*, 90 id. 266; *Simpson* v. *French*, 25 How.
Pr. 464; *Robertson* v. *M. Ins. Co.*, 88 N. Y. 541; *Marvin* v.

*Ins. Co.*, 16 Hun, 494; *Ripley* v. *Ins. Co.*, 30 N. Y. 136; *Underwood* v. *Ins. Co.*, 57 id. 500; *Marvin* v. *U. T. Ins. Co.*, 80 id. 282; 85 id. 278; *Ins. Co.* v. *Wilkinson*, 13 Wall. 222; *Merserau* v. *P. M. L. Ins. Co.*, 66 N. Y. 249; *Brown* v. *M., etc., Ins. Co.*, 13 Ins. L. J. 208; *Davis* v. *M., etc., Ins. Co.*, 13 Blatch. 462; *Walsh* v. *H. Ins. Co.*, 73 N. Y. 5; *Robertson* v. *M. Ins. Co.*, 88 id. 541; *Bennecke* v. *C. M. Ins. Co.*, 105 U. S. 355; *Lomer* v. *Meeker*, 25 N. Y. 361.) There was no error in the exclusion of testimony. (1 Greenl. on Ev. §§ 113, 114; *Anderson* v. *R. R. Co.*, 54 N. Y. 334; Code, § 844; Laws of 1845, chap. 195; Laws of 1867, chap. 557; *Bowen* v. *Stillwell*, 9 Civ. Pro. Rep. 277; *Williams* v. *Waddell*, 5 id. 193; *Hobart* v. *Hobart*, 62 N. Y. 83; *Wilson* v. *Munoz*, 6 Civ. Pro. 73; *Severn* v. *Nat. Bank*, 18 Hun, 228; *Lobdell* v. *Lobdell*, 36 N. Y. 327; *Nearpass* v. *Gilman*, 16 Hun, 121; *Dwight* v. *Ins. Co.*, 102 N. Y. 341; *Davis* v. *Gwynne*, 57 id. 676; *White* v. *Hoyt*, 73 id. 512; *Underhill* v. *Vandervoort*, 56 id. 242.)

*Samuel Greenbaum* for respondent. The non-payment of the October premium was waived by the defendant. (*Palmer* v. *P. M. L. Ins. Co.*, 84 N. Y. 63; *Dean* v. *A. L. Ins. Co.*, 62 id. 642; *Bodine* v. *E. F. Ins. Co.*, 51 id. 117; *Titus* v. *G. F. Co.*, 81 id. 419; *Robertson* v. *M. L. Ins. Co.*, 93 id. 544.) A waiver need not be based upon a new consideration in order to be binding. (*Prentice* v. *K. L. Ins. Co.*, 77 N. Y. 483; *Goodwin* v. *M. L. Ins. Co.*, 73 id. 480; *Burk* v. *H. Ins. Co.*, 80 id. 108–112; *Titus* v. *G. F. Ins. Co.*, 81 id. 410–419.) The defendant is estopped from asserting that the general agent had no authority to accept premiums after premium days. (*Attorney-General* v. *C. L. Ins. Co.*, 33 Hun, 138; *Whitehead* v. *N. Y. L. Ins. Co.*, 102 N. Y. 156; *Meyer* v. *K. L. Ins. Co.*, 73 id. 516.) It is a question of fact to be submitted to the jury as to whether the general agent had authority to execute the memorandum, and as to what the intention of that exhibit was under all the circumstances. (*Stillwell* v. *Carpenter*, 2 Abb. [N. C.] 238; *Nicholson* v. *Connor*, 8 Daly,

22; *Elwood* v. *W. U. T. Co.*, 45 N. Y. 553; *Kavanagh* v. *Wilson*, 70 id. 177; *Gildersleeve* v. *Landon*, 73 id. 609; *Wohlfahrt* v. *Beckert*, 92 id. 490.) The defendant failed to comply with the Laws of 1877, chapter 321. (*Phelan* v. *N. M. L. Ins. Co.*, 113 N. Y. 147; *Carter* v. *B. L. Ins. Co.*, 110 d. 15.)

Finch, J. This action was upon a policy of life insurance. The defense asserted the non-payment of the premium which fell due on the 25th of October, 1884. For that reason the trial judge ordered a verdict for the defendant, but the judgment entered thereon was reversed by the General Term whose decision we are now required to review.

There is not the least doubt as to the circumstances under which payment of the premium was postponed. Some time before its maturity the assured was considering the prudence of surrendering the policy to the insurer and taking a paid-up policy in exchange for the amount of its surrender value. Having that possible purpose in view, he wrote to the company inquiring for what amount a paid-up policy would be given in exchange. This was on the 3d of July, 1884. Four days later the company sent an answer stating the then present value of the policy and also what it would be in the ensuing October, and adding: "Dr. A. W. Goodale, general agent, at 153 Broadway, will give you further information, or you can write here." The assured was justified in assuming from the reference thus made that the general agent had authority to continue and carry out the negotiation for an exchange of policies as broad and effective as that of the home office. It left the assured to choose between the two in the further prosecution of his purpose. There the matter seems to have rested until the October premium became due. On the day of its maturity a son of the assured testifies that he called upon the general agent at his office in New York and told him that his father had concluded to take a paid-up policy, and then, acting on the supposition that a payment of the premium due was a step necessary to the intended

exchange, offered to the agent in money the amount of that premium. The agent advised a continuance of the existing policy and urged reasons against the substitution proposed. He said that payment of the premium was not necessary to entitle the assured to a paid-up policy, but suggested that the son should go home and talk the matter over with his father and let him decide in view of the suggestions which had been made. Of course that involved delay, and raised the question of what should be done about the premium due and which had been tendered. On that subject the agent said that the assured could come in at any time within a week or ten days and it would be all right. In this way the payment of the premium was prevented by the act and advice of the general agent to whom the company had referred the assured for further information on the subject of the meditated exchange. On the eighth of November the assured died, and two days later the son called at the office of the general agent, paid the premium and took a receipt, the agent saying: "Your father has concluded to continue the policy." This evidence warranted a conclusion that the premium due was tendered to the company but was not accepted through the interference of its general agent, who explicitly waived its immediate payment and consented to receive it whenever the question of a paid-up policy should be so settled as to make the payment of the premium necessary. This view of the transaction is supplemented by written evidence tending in the same direction. On the third of November the general agent, describing himself as "manager" and his office as a "branch office," acknowledged the receipt of the policy in question "to be replaced by paid-up in such amount as has been agreed upon," and adds at the end of the memorandum: "Time extended thirty days, in which to reach a decision with regard to taking paid-up policy." The evidence, therefore, makes it very clear that the default which occurred was a default occasioned by the act of the general agent of the company. The premium was tendered on the day it matured; it was not accepted as needless to a paid-up policy, but the advice

and argument of the general agent was employed to reverse
the purpose of the assured, and induce him to keep the old
policy in life, and time was given him to choose. The power
to choose implied the waiver of any forfeiture and the con-
tinued validity of the policy; and so it happens that the default
upon which the company relies is a default occasioned and pro-
duced not by any neglect of the assured, but by the affirmative
act of the general agent to whom the assured had been for-
mally referred. Passing by the inquiry whether the company
could avail itself of a default so occasioned, it is at least certain
that there was a waiver by the agent of the premium which
matured, the effect of which can only be averted by an utter
want of authority in the agent himself.

The policy contained the common clause restricting the
authority of all agents of the company, and denying to them
power " to waive or postpone payment of premiums, or to
accept it after " it becomes due, and upon those provisions
duly communicated to the assured the company relies.

Two circumstances furnish an answer and raise a question
of fact over the agent's authority. It was proved that he had
many times accepted the premiums of the assured after their
maturity and under circumstances which fairly charged the
company with knowledge of the facts, and made their accept-
ance of the money a ratification of the waiver of prompt pay-
ment by the agent. The assured had a right to infer that
special permission had been given the general agent to act in
that manner at least with reference to that policy. The notice
given contemplated that an agent might have such special
permission, and when the company, with knowledge of what
he was doing, ratified his repeated extensions of time and
waivers of prompt payment, it became as to the assured a
special permission and a grant of authority so to act. Rely-
ing upon that authority, the assured entered into an arrange-
ment by which, in consideration of the waiver by the agent
and the extension of time within which to pay, the assured
became bound within that time either to pay the deferred
premium or take out a paid-up policy for the specified

amount. That was his implied promise, and each promise was the consideration for the other. (*Homer* v. *Guardian Mut. Life Ins. Co.*, 67 N. Y. 483.) And this view of the situation is materially strengthened by the act of the company already referred to which gave to the assured a choice to continue his negotiations for a paid-up policy with the home office or the general agent in New York. He was justified in inferring that the general agent was armed with as much authority in the conduct of those negotiations as the home office itself. I think, therefore, that it cannot be said as matter of law there was no valid waiver, and so the reversal by the General Term was right.

That judgment should be affirmed, and judgment absolute for the plaintiff be rendered upon the stipulation with costs.

All concur.

Judgment accordingly.