POSTE v. AMERICAN UNION LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department. July 6, 1898.)

1. LIFE INSURANCE—POLICIES—TIME OF TAKING EFFECT—WAIVER.
    An application, made a part of the contract, provided that any policy issued thereon should not go into effect until the first premium had been actually paid during the lifetime of insured, and that only certain named officers could alter the contract. The policy was delivered to insured, an attorney of the insurance company, some four months before his death, but no premiums were paid. The complaint on the policy alleged a special agreement waiving payment of the premium, which was only proven by showing that the company in its report to the insurance department, shortly before the death of insured, reported the policy under the head of policies.

at present in force. The company showed, however, that they reported such policies as were outstanding at the date of the report, subject to correction by later reports if they lapsed in the meantime. *Held*, that no cause of action existed in favor of the beneficiary.

2. SAME.

A policy, in the absence of facts accompanying its delivery in the nature of an estoppel, merges all previous oral stipulations, and is the contract.

Herrick and Putnam, JJ., dissenting.

Appeal from special term, St. Lawrence county.

Action by Anna E. Poste against the American Union Life Insurance Company to recover on a policy. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John C. Keeler, for appellant.

George W. Miller, for respondent.

LANDON, J. The defendant, September 13, 1895, executed and delivered to William A. Poste a policy of insurance in the sum of $10,000, payable to the plaintiff, his wife, upon his death. Mr. Poste died January 21, 1896. Mr. Poste never paid anything upon the policy, and the single question presented by this appeal is whether the policy, which was found among Mr. Poste's papers after his death, ever became operative as a contract. The policy calls for a payment of a premium of $126.40 in advance, and a like payment semiyearly thereafter. It was issued upon the application signed by Mr. Poste, which contained this provision: "That any policy issued thereon shall not go into effect until the first premium has been actually paid during the lifetime and good health of the insured." The policy states that the application is a part of the contract. It also states that "no person, except the president, first or second vice president, comptroller, or secretary of the company, is authorized to make, alter, or discharge contracts or waive forfeitures." The complaint alleges that at the time of the issuing and delivery of the policy Mr. Poste was an attorney and counselor at law, and one of the attorneys in the employ of the defendant, doing its legal business, and so continued until his death; that it was agreed between him and the defendant that he need not pay the premium in advance, but that he might pay the same at some future time, and that meantime the policy should be in full force; and because of such agreement Mr. Poste deferred payment in advance, and postponed payment, and accepted the policy upon such agreement. The answer placed this special agreement in issue. The plaintiff failed to prove this special agreement. The plaintiff proved that the defendant, in its report to the insurance department of the state, made January 3, 1896, reported, respecting this policy, under the caption, "Description of all the policies and other life contingent obligations of the American Life Insurance Company at present in force, with all the data necessary for a correct valuation of the same, returned to the insurance department of the state of New York by the actuary of said company": "Number of policy, 2,192. Date of issue, ninth month, 1895. Age at issue, 46. Form of policy,

T., ten years. Amount insured, $10,000." The evidence tended to show that the company reported such policies as were outstanding at the date of the report, subject to correction by later reports if they lapsed meantime. The learned trial judge in his decision stated the grounds thereof to be: "That the complaint alleging that the policy therein described was delivered upon a special agreement, and admitting that the premium was not paid, and the testimony failing to warrant a finding that there was any special agreement, the plaintiff has failed to sustain the allegations of the complaint, and to prove a cause of action against the defendant." The propositions of fact thus stated by the trial judge are established. The report to the insurance department, in connection with the delivery of the policy to Mr. Poste without prepayment, might tend to support a finding that the prepayment of the premium was waived, if the admission by the pleadings of nonpayment did not preclude both inference and finding, or if it could be waived otherwise than as specified in the policy itself, or if the effect of the delivery of the policy without prepayment were not declared as above by the application signed by Mr. Poste. But the policy does not bind the insured to pay anything. His payment is optional with him. If he pays the policy, by its terms it binds the company. If he does not pay, he does not run in debt to the company, as in the case of a fire policy delivered without prepayment; he simply fails to bind the company, or to give validity to the policy. Roehner v. Insurance Co., 63 N. Y. 160; Evans v. Insurance Co., 64 N. Y. 304. In a fire policy the term of the insurance is usually specified like this: "From noon, May 1, 1898, to noon, May 1, 1899," and thus the time covered is the same whether you buy your insurance for cash or upon credit. But in this life policy the term of the insurance does not begin "until the first premium has been actually paid during the lifetime and good health of the insured." Grant that you have bought it on credit, what have you bought? Simply the option to give the policy effect by payment according to its terms. Of course, there might be facts estopping the company from insisting upon the condition of prepayment, but the allegations of the complaint tending in that direction were not proved. The report of the company to the department was unilateral. It reported a risk that might at any time be perfected by the policy holder, but never was perfected. The policy, in the absence of acts accompanying its delivery in the nature of an estoppel, merges all previous oral stipulations, and is the contract. Insurance Co. v. Mowry, 96 U. S. 544.

We think the judgment must be affirmed, with costs. All concur, except PUTNAM and HERRICK, JJ., dissenting.

PUTNAM, J. (dissenting). The defendant, on or about the 13th day of September, 1895, executed and delivered to William A. Poste, deceased, a policy for the sum of $10,000 upon his life, payable to the plaintiff, his wife. It is conceded that the premium was never paid. The application for insurance, which forms a part of the policy, contains the usual condition, viz.: "That any policy issued thereon shall not go into effect until the first premium has been actually paid during the lifetime and good health of the insured." The policy also pro-

vided: "No agent, or any other person except the president, first or second vice presidents, comptroller, or secretary of the company, in writing, has power to alter or change in any way the terms of the policy contract, or waive forfeitures." The insured died on the 21st day of January, 1896, the policy remaining in his possession, and being found in his safe after his death.

The complaint contains an allegation averring an agreement between the deceased and the defendant, by which the latter was to give the former credit for the premium of $126.40, which, by the terms of the policy, was payable in advance. Under such an allegation, the plaintiff, to recover in the action, was compelled to establish on the trial a waiver by the defendant of the prepayment of the premium. There is no substantial conflict in the testimony, and the question is presented whether the trial judge was right in his conclusion that the policy in question never took effect in consequence of the failure of Mr. Poste to pay the premium. Notwithstanding the clause above quoted, in the application, which must be deemed to have the same force as if inserted in the policy, the defendant could waive prepayment of the premium. In Van Schoick v. Insurance Co., 68 N. Y. 434–439, Folger, J., remarks:

"It has been held over and over that the customary clause in a policy, that it will not be binding on the insurer until the premium is paid in fact, may be waived by parol, or by act, and the policy may be delivered and become a binding contract upon the insurer, without payment in hand of the premium. Trustees of First Baptist Church v. Brooklyn Ins. Co., 19 N. Y. 305; Sheldon v. Insurance Co., 26 N. Y. 460; Wood v. Insurance Co., 32 N. Y. 619; Boehen v. Insurance Co., 35 N. Y. 131; Bodine v. Insurance Co., 51 N. Y. 117."

Did the defendant in this case give credit to the insured for the premium? No agent or officer of the company was sworn as to the actual transaction. We have simply the fact that the policy was delivered to Mr. Poste, and remained in his possession until the time of his death; and also that the defendant, about four months after the date of the policy, reported it to the insurance department as an outstanding obligation of the company.

In Bowman v. Insurance Co., 59 N. Y. 521–526, Judge Folger says:

"Undoubtedly, also, the defendant could waive its right to immediate payment, and give the plaintiff credit. A delivery of the policy without exacting payment is, for the time, a waiver of the right to have immediate payment. Nor does the fact that the policy contains a condition which expresses just what the law, without any condition, declares, make the delivery any less a waiver of the right to instant payment, and less a giving of credit; for the defendant may waive all conditions in its own favor, as well as those which the law provides for it."

In the opinion in Wood v. Insurance Co., 32 N. Y. 619, 620, it is said:

"If he had waived the condition of prepayment, the insurers would have been bound by his act, though it was in violation of their private instructions. The law would have implied such waiver if the policy had been delivered by the agent without requiring payment of the premium, and had been accepted by the plaintiff as a complete and executed contract."

In Bodine v. Insurance Co., 51 N. Y. 117–122, it was held that a waiver of prepayment of the premium may be shown by direct proof, or be inferred by circumstances.

The authorities cited relate to a waiver by fire insurance companies, but there is no reason why the same doctrine should not apply to a life insurance company. See Wyman v. Insurance Co., 119 N. Y. 274, 23 N. E. 907; Merserau v. Insurance Co., 66 N. Y. 274; Marvin v. Insurance Co., 85 N. Y. 278. In the two cases last cited the waiver of the payment of the premium claimed by the respective plaintiffs was held not established solely on the ground of a want of power of the agents who assumed to act for the companies. In this case no such question arises. It is conceded in the answer that the policy was executed by the defendant, and it is not denied that it was delivered to Mr. Poste, the answer merely denying that it was "for value received" delivered. And a delivery to the deceased was established by the evidence on the trial. Hence, if the proof was sufficient to show a waiver of prepayment of the premium, under the pleadings and evidence on the trial, it was a waiver by the defendant itself. It is true that in most of the authorities above referred to there was proof given, aside from the delivery of the policy, indicating an intent of the insurers to give a credit to the insured for the premium. But in the case of Boehen v. Insurance Co., 35 N. Y. 131, approved in Bodine v. Insurance Co., 51 N. Y. 122, and in Van Schoick v. Insurance Co., 68 N. Y. 439, it appeared that a certificate of renewal was delivered to the plaintiff's agent. Nothing was said as to giving credit, nor did it appear that the company had been in the habit of giving the plaintiff credit, for premiums. It was held that "the delivery of a policy without requiring payment raises a presumption that a short credit is intended." I think the delivery to Mr. Poste on the 13th of September, 1895, and its retention in his possession until his death, four months afterwards, was sufficient evidence of a waiver by the defendant of the prepayment of the premium, there being no testimony offered or given by the defendant, or explanation made, to rebut the presumption arising from such delivery. As held in the authorities above cited, "a delivery of the policy without exacting payment is for the time a waiver of a right to have immediate payment," or at least evidence of such a waiver. It was within the power of the company to have produced in the trial the agent or officer who delivered the policy to the deceased, and to have shown the circumstances surrounding the transaction, and that the delivery was not an unconditional one; to have offered some evidence to rebut the presumption arising from such delivery. Failing to do so, the doctrine stated in Boehen v. Insurance Co., supra, should apply. If, however, it was incumbent on the plaintiff, in order to sustain her contention that prepayment of the premium by Mr. Poste was waived by the defendant, to show other facts besides the mere delivery of the policy to him, she did produce convincing evidence in that regard. It was shown that the defendant, in its report to the insurance department of the state on January 3, 1896, three months and a half after the delivery of the policy, and but eighteen days before the death of the assured, under the caption, "Description of all the policies and other life contingent obligations of the American Union Life Insurance Company at present in force, with all the data necessary for a correct valuation of the same re-

turned to the insurance department of the state of New York by the president and actuary of said company," reported the policy issued to Mr. Poste as follows: "Number of policy, 2,192. Date of issue, ninth month, 1895. Age at issue, 46. Form of policy, T., at ten years. Amount insured, $10,000." And the affidavit annexed to said report was as follows:

"State of New York, County of New York—ss.: E. S. Savage, vice president, and B. F. Reimund, actuary, of the American Union Life Insurance Company of New York, being duly sworn, severally depose and say, and each for himself says, that the foregoing register or registers contain a full and correct list of all the outstanding policies in force on the 31st day of December, last, with all the data necessary to make a net seriatim valuation of the same, and that the policies that have ceased to be in force prior to said date are correctly marked off and canceled, according to their best information, knowledge, and belief.                                   Edward S. Savage.
                                                                "B. F. Reimund.

"Sworn and subscribed before me this 3rd day of January, 1896.
                           "Edward Haight, Notary Public Kings County.
"Certificate filed in New York City."

This report was an official act of the company itself, sworn to by its officers, and affords satisfactory evidence that the policy issued to Mr. Poste was then in force, and, as it is conceded that the premium had not been paid, that prepayment of the premium had been waived by the defendant. If the position taken by the defendant on the trial and in this court on the appeal is correct, the policy in question was not in force on the 3d day of January, 1896; had never been in force; had never had an inception or delivery; and the report as to said policy, as well as the affidavit appended to said report, were in fact false. It is difficult to conceive of a more conclusive admission of the truth of the plaintiff's contention than this official and verified report. The attempted explanation by the company that it was in the habit of reporting to the insurance department, among its policies in force, those which had never had any legal inception or delivery, is not satisfactory to me.

The deceased was one of a firm of attorneys who were doing business for the defendant at the time the policy was issued, and it may be presumed that it was the intent of the parties that the claim of the company for the premium on the policy in question should be paid by services thereafter rendered by Mr. Poste for it. It appearing on the trial that the policy was delivered to Mr. Poste, and retained by him until his death, and that $3\frac{1}{2}$ months thereafter the company, in its sworn statement to the insurance department, reported this policy as outstanding and in force, in the absence of any conflicting evidence, I think it satisfactorily appeared that the defendant had voluntarily given credit for the premium to the insured, and hence that the plaintiff was entitled to recover.

From the evidence in the case it cannot be doubted that the deceased accepted the policy. He took it into his possession, and placed it among his private papers in his safe, and at the time of his death it had been in his possession four months. His possession and retention of the policy for so long a period was sufficient to show his intent to accept a delivery thereof. The report of the defendant also shows such acceptance, and hence the deceased became liable

to the company for the amount of premium reserved in said policy. Sheldon v. Insurance Co., 26 N. Y. 460–465. Such authorities as Roehner v. Insurance Co., 63 N. Y. 160, and Evans v. Insurance Co., 64 N. Y. 304, are not applicable to cases where it appears that a credit was given for a premium. Those authorities relate to the nonpayment of an annual premium after a delivery of a policy of life insurance, where there was no evidence to show a valid agreement to postpone the time of the payment of the premium. In such a case the liability of the insurance company ceases on the breach of the condition of the policy by the insured, and the latter does not become liable to pay the annual premium to the corporation. Although in this case the defendant waived prepayment of the premium by the delivery of the policy without exacting payment, it could, at any time after the delivery of the policy, have enforced such payment by making a proper demand therefor of Mr. Poste, and, in case of his neglect or refusal to comply with such demand, the company, under the,provisions of section 92, c. 690, Laws 1892, could have canceled the policy by serving the notice required by the provisions of the section referred to.

My conclusion is that the judgment should be reversed, and a new trial granted; costs to abide the event.

HERRICK, J., concurs.