## THE MACCABEES v. JOHNSON.
### (No. 7357.)

(Court of Civil Appeals of Texas. San Antonio. May 13, 1925. Rehearing Denied June 10, 1925.)

**1. Insurance ⊜⊐755(2)—Record keeper held agent of association in collecting and forwarding dues notwithstanding provision in by-laws.**

A record keeper of a subordinate body of a fraternal benefit society, who for several years received monthly dues from member, *held* to be an agent of society in collecting and forwarding such dues, notwithstanding by-laws and regulations. providing that he shall be agent of subordinate body and its members.

⊜⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Insurance ⚮755(4)—Forfeiture for delinquent payment of dues held waived by acceptance of overdue payments through agent.**

Where record keeper of subordinate body of fraternal benefit society for several years received delinquent dues from member, *held* that, notwithstanding Rev. St. art. 4847, society was charged with knowledge of failure of member to promptly pay dues, and waiver of prompt payment of dues was that of society, precluding it from setting up forfeiture.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Action by Mrs. Callie Johnson against The Maccabees. Judgment for plaintiff, and defendant appeals. Affirmed.

Street & Coston, of Waco, for appellant. Durwood H. Bradley, of Lubbock, and Sam J. Callaway, of Fort Worth, for appellee.

FLY, C. J. This is a suit by appellee to recover of appellant a judgment for $1,000, alleged to be due her on a benefit certificate issued by appellant to Walter S. Johnson, her deceased husband, in which she was named as the beneficiary. Appellant sought to evade payment of the amount because the deceased had failed to pay the January rate or assessment of $1.30. The cause was heard without a jury, and judgment rendered in favor of appellee for $1,000.

The facts show that on August 29, 1916, a benefit certificate for $1,000 was issued by appellant to Walter S. Johnson, and he paid the monthly rate of dues thereon up to January 1, 1922. He did not pay the dues for January, 1922, until February 24, 1922, when he paid the amount due for January and February. Appellee was the beneficiary in the certificate, and her husband died on March 5, 1922. After his death a notice was received from C. P. Buchanan, secretary of Tent No. 1200, located at Itasca, Tex., and who was the agent of appellant in the collection of dues from the members of Tent No. 1200, that deceased had been automatically suspended for nonpayment of the January assessment, amounting to $1.30. For at least three years immediately preceding his death Walter S. Johnson, deceased, who lived in Fort Worth, had sent his dues to Buchanan at Itasca, sometimes two months' payments at a time, and often after the end of the first month, and after the 10-day suspension period granted, after the end of a month, had expired. Buchanan had always received the payments and entered them as received during the month for which they were due. Deceased was hurt in an elevator on or about January 14, 1922, and grew worse until his death on March 5. It is significant that the custom of receiving two months' dues in the second month was declared at an end during this illness, and only the day before the death of Walter S. Johnson. The thought occurs that, had he not been in extremis at the time, no suspension would have been mentioned. Sending a health certificate to a dying man for him to fill out and return was the refinement of cruelty.

Buchanan received the post office order for the dues of January and February on or about February 25, but he did not notify Walter S. Johnson of his suspension until he was dead. He admits that he knew that Johnson had been hurt, and the facts create the impression that he was holding the forfeiture in abeyance until he could ascertain whether Johnson would recover. He was gambling on his living, and he took a close margin. He had for years been receiving dues from Johnson just as he received the last amounts, but he set aside the custom when he supposed the man was dying. This is one of the most extreme cases of forfeiture we have had brought to our notice, and "'tis pity, 'tis true, and pity 'tis, 'tis true" that a fraternal benefit society will place itself in the attitude occupied by appellant in this case. Such conduct shakes the foundation of fraternal benefit insurance, and destroys the confidence of the masses of the people in that form of insurance. This man for five years had been paying his monthly dues to appellant, and for three years had been paying them for two months in the second month, and without cavil or question such dues had been accepted until it was ascertained that the man was in an extreme condition, when the pound of flesh was demanded, and the courts of the country are informed that justification for the cold exactions of the society is found in the fact that "it is so nominated in the bond." The law will not sanction such action, and justice and equity will not tolerate it.

[1] The record keeper was the agent of appellant in the collection and forwarding of the dues of the members, in spite of by-laws and regulations providing that he shall be the agent of the subordinate body and its members. As said by the Supreme Court of the United States in Supreme Lodge, Knights of Pythias, v. Withers, 177 U. S. 260, 20 S. Ct. 611, 44 L. Ed. 762:

"The position of the secretary must be determined by his actual power and authority, and not by the name which the defendant chooses to give him. To invest him with the duties of an agent, and to deny his agency, is a mere juggling with words. Defendant cannot thus play fast and loose with its own subordinates. Upon its theory the policy holders had absolutely no protection."

That is aptly said, but in such cases it is not only playing "fast and loose with its own subordinates," but it is juggling with the rights of men and their wives and children, and rendering uncertain and precarious ef-

forts made by the husband and father to leave something material for his loved ones. Buchanan was the agent of appellant in collecting and forwarding the dues of the members, and multiplied by-laws cannot render him an agent for some one else.

[2] Article 4847, Rev. Stats., provides that the constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof, and on all beneficiaries of members. It seems that appellant's laws have provided as empowered by the law of the state. The evidence, however, shows that for three years Buchanan, if not all the time, at numerous times, sent in dues of Walter S. Johnson, and the supreme body would be charged with knowledge that the dues were being paid in a different way from that designated in the laws. The record keeper was required to report monthly collections. Appellant was charged with knowledge of any failure of any member to pay his dues during the month for which they were assessed. The presumption is that the officer performed his duty, and the waiver of payment during the month was adopted by the supreme body and became its waiver and not that of a subordinate officer.

After referring to the statute under consideration the Commission of Appeals, through presiding Justice McClendon, in Calhoun v. The Maccabees, 241 S. W. 101, held:

"It cannot be questioned * * * that the Supreme Tent itself or its officers acting within the scope of their official duties, had the power to bind the Supreme Tent in this regard. The general rules applicable to waiver and estoppel apply to their acts in the same manner and with the same effect that they apply to the acts of other corporations or individuals and their duly authorized agents. This principle is now firmly established. * * * It is also well established that the general principles of the law of agency apply to these associations in like manner as to other associations and individuals. Where, therefore, the association has delegated to a local body or officer some duty to be performed for the association, the latter is bound by the acts of the agent within the scope of the delegated duties, upon the principle that the acts of the agent within the line of his delegated duties are, as a matter of law, the acts of the principal. The principal is also charged, as a matter of law, with knowledge of the acts of the agent within his official duties; and knowledge or notice acquired by the agent in the performance of those duties is, as a matter of law, imputed to the principal."

The facts in that case are strikingly similar to the facts in this case, the appellant in this case being the appellee in the Calhoun Case, in which the society was seeking to evade payment of $1,000 taken out by a brother in favor of his sister, Katie Calhoun, and the society was seeking to avoid payment after the death of the brother, because the $1.30 due in February, 1918, had been appropriated by the agent and had not reached the society. The district court and Court of Civil Appeals held that a forfeiture had taken place, but the Commission of Appeals, with the approval of the Supreme Court, held that the society was liable, and reversed the judgment, and rendered one in favor of the beneficiary for the amount of the policy.

As said by the United States Supreme Court in the Withers Case herein cited:

"The reports are by no means barren of cases turning upon the proper construction of this so-called 'agency clause,' under which the defendant seeks to shift its responsibility upon the insured for the neglect of Chadwick [the agent] to remit on the proper day. In some jurisdictions it is held to be practically void and of no effect; in others, it is looked upon as a species of wild animal, lying in wait and ready to spring upon the unwary policy holder, and in all, it is eyed with suspicion and construed with great strictness."

We feel disposed to adopt the wild animal theory, and view the whole proceeding not only with suspicion but with positive condemnation.

The course of dealing of the agent with the deceased must necessarily have been known by the Supreme Tent. For years it had been accepting dues paid by deceased after the prescribed time, and the belated reports of the recorder must have put appellant on notice that the dues were being paid to and accepted by the recorder after the time prescribed in the by-laws. The assured had the right to rely on the acts of the agent, and to believe that they had been ratified by the society. The presumption would arise from all the circumstances that the society knew of the course of conduct of the recorder, Buchanan, through a number of years, and they acquiesced in his acts. Wyman v. Phœnix Life Ins. Co., 119 N. Y. 274, 23 N. E. 907; Kenyon v. Knights Templar, 122 N. Y. 247, 25 N. E. 299; De Frece v. National Life Ins. Co., 136 N. Y. 145, 32 N. E. 556.

The judgment will be affirmed.