**SOVEREIGN CAMP, W. O. W., v. BAILEY.**
**(No. 3030.)**

(Court of Civil Appeals of Texas. Texarkana. Nov. 18, 1925. Rehearing Denied Dec. 3, 1925.)

1. **Insurance ⬅➡718—Laws of fraternal beneficiary association, together with benefit certificate constitute contract.**

Laws of fraternal beneficiary association, together with benefit certificate issued by it, constitute contract between association and member thereof.

2. **Estoppel ⬅➡54 — One cannot waive that which he does not know.**

One cannot waive that which he does not know.

3. **Estoppel ⬅➡52—When waiver exists, stated.**

A waiver exists only where one with full knowledge of material facts does or forbears something inconsistent with the existence of the right, or of his intention to rely on that right.

4. **Insurance ⬅➡763—Mere knowledge that arrears proffered for reinstatement is insufficient on which to predicate waiver of requirement of good health.**

Mere knowledge that arrears were proffered for reinstatement of member of fraternal beneficiary association is insufficient on which to predicate waiver of requirement of good health as condition to reinstatement.

5. **Estoppel ⬅➡52—Essence of doctrine of "estoppel" is that party relying upon it was misled to his prejudice.**

Essence of doctrine of "estoppel" is that party relying upon it was misled to his prejudice by reason of affirmative acts or conduct, or representation by other party, or by reason of silence of the other party when in equity and good conscience he ought to have spoken.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

6. **Insurance ⬅➡718—Delinquent member bound to knowledge of fundamental laws of order in respect to right to reinstatement.**

Insured member of a fraternal beneficiary association was bound to a knowledge of the fundamental laws of the association in respect to the right of reinstatement.

7. **Insurance ⬅➡763—Clerk of local camp held unauthorized to waive requirement of good health as condition to reinstatement.**

Clerk of local camp of fraternal beneficiary association was unauthorized to waive association's requirement of good health as condition to reinstatement or any constitution or by-law provisions, where clause in constitution of such order authorized by Rev. St. 1925, art. 4846, so provided.

On Motion for Rehearing.

8. **Insurance ⬅➡763—Fraternal beneficiary association held not to have waived good health requirement in accepting arrears in premium from delinquent member.**

Fraternal beneficiary association *held* not to have waived good health requirement as condition to reinstatement of delinquent member, in originally accepting arrears in premium from such member, where at time of such acceptance it did not know the member was ill.

9. **Insurance ⬅➡755(1)—Fraternal beneficiary association held not estopped from asserting forfeiture of policy for nonpayment of dues within required time.**

Fraternal beneficiary association *held* not estopped from asserting forfeiture of policy for nonpayment of dues within required time.

Appeal from District Court, Dallas County; Town Young, Judge.

Action by Mrs. Kate C. Bailey against Sovereign Camp, Woodmen of the World. Judg-

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ment for plaintiff, and defendant appeals. Reversed and rendered.

The suit is by appellee, the beneficiary, upon a benefit certificate issued to her deceased husband by the appellant. It is alleged that at the time of his death the deceased had fully paid all the dues and assessments on the certificate, and that all provisions in the certificate had been complied with and the certificate was in full force and effect. This is denied in the answer. The appellant pleaded that the deceased had allowed his certificate to lapse and become null and void under the laws of the order by reason of his nonpayment of the regular dues and assessment for May, 1922, before the expiration of the said month of May, and that he had not been reinstated under the laws of the order, and that the order was under no obligation to reinstate him because on the tenth day after the suspension he was stricken with a disease which eventuated in his death within eight days. The appellee, in reply, pleaded waiver of forfeiture for nonpayment of dues and assessment within the prescribed time by accepting payment of the same unconditionally after that time, and estoppel from asserting forfeiture of the right to benefits under the certificate. The case was tried upon an agreed statement of facts, and thereupon the court concluded that judgment should be entered in favor of the appellee.

The appellant society is a fraternal beneficiary association having a lodge system with a representative form of government. J. F. Bailey, the husband of appellee, became a member of the order in November, 1897, at the age of 43 years. A benefit certificate was issued to him for $2,000, payable to his wife. The certificate contained the agreement of the insured to make prompt payment of all dues and assessments and to comply with and conform to all the laws, rules, and usages of the order. The insured died on June 18, 1922, and proof of his death was made in the manner required by and upon forms furnished by appellant. The officers of the Sovereign Camp received the proofs of death on July 12, 1922; and nine days afterwards, on July 21, 1922, wrote and mailed to appellee a letter notifying her that the claim made was refused upon the grounds "that he (the insured) was under suspension at the time of his death," and "that he was never legally reinstated after his suspension of June 1, 1922." In the same letter the Sovereign Camp inclosed a draft drawn on its bank for $4.32. The draft bore the notation, "Money refunded acct. James F. Bailey." The appellee received the letter. The $4.32 was the return of the assessments proffered for reinstatment. The suit was filed on January 25, 1923.

The following agreed facts appear:

"That the said James Franklin Bailey, the insured in said certificate named, died on the 18th of June, 1922, and that he was a member in good standing in the defendant order up to and including midnight of May 31, 1922. That whether he was a member therein in good standing at the time of his death is a disputed issue in this case, the plaintiff claiming that he was, and defendant denying it.

"That during the year 1922 the said James Franklin Bailey resided in Dallas, Tex., and was a member of Lone Star Lodge No. 2 of defendant, located at Fort Worth, Tex., and that on June 10, 1922, a postal money order was purchased in Dallas and mailed on the same date to the clerk of Fort Worth Lodge for the full amount of the May dues, for both Sovereign and local camps. That the same was received by the clerk on the 12th day of June, 1922, and a receipt was issued by him on said last-named date therefor and mailed to defendant at Dallas, Tex.

"That on June 17, 1922, a post office money order covering the June dues for 1922 was mailed to the clerk at Fort Worth, which was by him duly received and receipt issued therefor and mailed on June 19, 1922.

"That during the year 1919 the said James Franklin Bailey paid his May dues on June 2d; that he paid his July dues on August 11th; that he paid his August dues on the 4th of September; that he paid his September dues on the 3d of October; and that he paid his December dues on the 1st day of January, 1920; that during the year 1920 he paid his January dues on the 7th of February; that he paid his February dues on the 1st of March; that he paid his September dues on the 1st day of October, and that he paid his December dues on the 1st day of January, 1921; that for the year 1921 he paid his February dues on the 3d of March; that he paid his April dues on the 2d day of May; that he paid his July dues on August 1st, and his December dues on the 2d day of January, 1922; and that during the year 1922 he paid his March dues on the 1st of April; that he paid his April dues on the 1st day of May; that his May and June dues for that year were paid as hereinabove recited. That all of the dues aforesaid, with the exception of the May and June dues for 1922, were retained by the Sovereign Camp of the Woodmen of the World without any objection whatever made known to the insured or the beneficiary in said certificate named, and that all dues for said years were paid by mail from Dallas, Tex., to the clerk of Lone Star Lodge at Fort Worth.

"It is further agreed that not only sovereign Bailey made payments of his monthly dues after the current month for which they were due as has above been set out, but that it is, and has been for some time, a general practice of a great many of the members of Lone Star Lodge to do likewise.

"It is admitted that said draft was received by plaintiff on July 24, 1922, and that she refused to accept the same and immediately returned it to the general attorney of the defendant, who personally mailed the same to her.

"That on the 21st day of July, 1922, the general attorney of the defendant in this case wrote a letter to the clerk of the local camp at Fort Worth.

"That on the 24th day of July, 1922, the clerk of the local camp at Fort Worth mailed to the plaintiff in this case two checks; one for the sum of $4.32, which he claimed to be a refund of the June dues for the year 1922, and a sec-

ond check for fifty cents (50¢), which was mailed on same date as a refund of May and June local dues; a copy of which checks are hereto attached, marked 'Exhibit D' and made a part hereof. That the same were received by the plaintiff in this case on July 25, 1922, and immediately returned to the sender. That at the time all the checks in this case were mailed to the plaintiff the Sovereign Camp had received notice of the death of the said James F. Bailey. That no objection was made, at the time said dues were paid, as to the time of their payment. That the first objection on the part of the defendant in this case to the time or manner of the payment of the dues was the receipt by the plaintiff in this case of the checks hereinabove set out and the letters accompanying same.

"It is further agreed that the deceased, J. F. Bailey, was first taken sick with the illness which caused his death on June 10, 1922; that he received medical attendance on said date; and that he died of said illness on June 18, 1922.

"It is further agreed that at no time that any dues were paid by the insured, and especially the May and June dues of 1922, was any verbal or written representation whatever made to the defendant or the local lodge at Fort Worth, or to any one else, as to the condition of the health of the insured, and that no request or demand was made upon him, or any one representing him, by any person for a certificate concerning his health, or that he was in good health.

"It is further agreed that at the time of the receipt of the said May and June dues for 1922 by said clerk at Forth Worth, Tex., said clerk had no knowledge whatsoever of the condition of the health of the said Bailey.

"It is further agreed that none of the officers of the Sovereign Camp had actual knowledge of the fact that James F. Bailey's dues had been paid for May, 1922, as has been in paragraph 3 hereinabove set out, and did not actually know of that fact until it received proof of death of said Bailey on July 12, 1922; nor did they have actual knowledge of the fact that said James F. Bailey paid any of his dues after same became delinquent, as set out in paragraph 6 hereof. It is further agreed that the clerk of Lone Star Lodge did not make remittances and report of collection of dues for May, 1922, to the Sovereign Camp until June 12, 1922, and that said remittance and report included the dues of James F. Bailey for May, 1922, made as hereinabove set out."

The laws of the order, as shown, appear as follows:

"Sec. 63. (a) Every member of this society shall pay to the clerk of this camp one annual assessment or one monthly installment of assessment as required by these laws or by the provisions of his certificate, which shall be credited to and known as the Sovereign Camp fund, and he shall also pay such camp dues as may be required by the by-laws of his camp. He shall pay any additional Sovereign Camp fund and camp dues, or either, which may be legally called.

"(b) If he fails to make any such payments on or before the last day of the month he shall stand suspended, and during such suspension his beneficiary certificate shall be void.

"Sec. 64. A member suspended for nonpayment of assessments or dues is not entitled to any benefits of this society. He shall not be entitled to receive the passwords nor to participate in any of the business or social proceedings of his camp. He may be admitted at a meeting only to pay his arrearage and must retire if he fails to do so.

"Sec. 65. No suspended member shall be reinstated whose health is at the time impaired, or becomes impaired within 30 days after any attempted reinstatement, or who has used intoxicants to such an extent as to become frequently intoxicated, or who has become addicted to the use of opiates, cocaine, chloral or other narcotic or poison to such an extent as to impair his health, or who has made false representations in his application to become a member, or been guilty of any of the offenses mentioned in these laws.

"Sec. 66. (a) Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health at the time, and continue in good health for thirty days thereafter, and not addicted to the excessive use of intoxicants or narcotics, he shall be reinstated and his beneficiary certificate again become valid.

"(b) After the expiration of ten days and within three months from date of suspension of a suspended member, to reinstate he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed that he is in good health at the time, and continue in good health for thirty days thereafter, and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue.

"(c) Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and continue in good health for thirty days thereafter, and if any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above conditions."

"Sec. 82. (a) No officer, employee or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws, nor shall any custom on the part of any camp or any number of camps—with or without the knowledge of any Sovereign officer —have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws then in force or thereafter enacted, nor shall the knowledge or act of any officer or employee of this society cause a waiver of the provisions of these laws by the society or an estoppel of this society."

Alvin H. Lane and Gresham, Willis & Freeman, all of Dallas, for appellant.

Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for appellee.

LEVY, J. (after stating the facts as above). The appellant's propositions in effect present the points in view: (1) That the insured was not reinstated as a matter of right under his lapsed certificate, because at the time he was sick with a disease from which he subsequently died; and (2) the order did not waive compliance with the requirement of good health of the insured, and is not estopped from insisting that the insured was not a member in good standing at the time of his death.

[1] It is believed that the appellant's contention should be sustained. The laws of the order, quoted above, together with the benefit certificate, constitute the contract between the parties. The laws provide that if the insured member shall fail to pay his monthly installment of assessment and camp dues "on or before the last day of the month" for which the same are due and payable, "he shall stand suspended, and during such suspension his beneficiary certificate shall be void." The provision is plain and direct, and thereunder the mere failure of the insured member to pay, as admittedly happened in the present case, his monthly assessment and dues at the appointed time, ipso facto works a forfeiture of his membership and an abrogation of the contract between the parties. That is the clear legal effect immediately upon the contingency happening, and the delinquent has not any longer a claim against the order, unless thereafter reinstated in the order in accordance with the terms and requirements of its laws in that respect. And viewed in the light most favorable to the appellee, there is no room in the evidence upon which to predicate a ruling that the insured member was reinstated, as a matter of right or contract, in the order prior to his death, or at all. The insured member did not meet, and was wholly disabled from meeting, the terms of the laws of the order authorizing and permitting reinstatement so far as relates to "good health." The laws of the order expressly provide that an insured member who shall have forfeited his benefit certificate by a default in the payment of dues and assessment at the appointed time may be reinstated and his benefit certificate revived within the designated period of not exceeding three months after the default, only upon the following conditions in fact existing, viz.: (1) "Pay all arrearages and dues to the clerk of his camp," and (2) "be in good health" and not "impaired health" at the time of the application and for "30 days after any attempted reinstatement." Payment of arrearages and dues is not sufficient to accomplish the reinstatement unless the member actually be in good health at the time and continued in good health for 30 days thereafter. The law expressly provides:

"No suspended member shall be reinstated whose health is at the time impaired, or becomes impaired within thirty days after any attempted reinstatement," etc. * * * "Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and continue in good health for thirty days thereafter," etc.

Mr. Bailey, as admitted, "was first taken sick with the illness which caused his death, on June 10, 1922, that he received medical attendance on said date, and that he died of said illness on June 18, 1922"; hence, as affirmatively proven, Mr. Bailey was, in virtue of his serious sickness, within the particular description of delinquent members expressly barred from the right of reinstatement and revival of the benefit certificate. Gilmore v. Grand Temple and Tabernacle (Tex. Civ. App.) 222 S. W. 294. He was under "suspension," in virtue of the default in payment of dues and assessment, at the time of his death on June 18th.

The controversy, then, must be determined upon the last contention of appellee, which is that the appellant order waived the forfeiture of the certificate and cannot now be heard to say that Mr. Bailey was not a member in good standing at the time of his death. The contention is based upon: (1) The order's having received the arrearages for May on June 12, 1922, and retained the same until June 21, 1922; and (2) upon the acts and conduct of the clerk of the local camp at Forth Worth and the Sovereign officers.

[2-5] But we believe that the doctrine of waiver or of estoppel cannot be made applicable to the instant case. At the time Mr. Bailey mailed the money order for his May arrearages, he did not notify the clerk of the local camp that he was sick and the local clerk, as admitted, "had no knowledge whatever of the condition of the health of the said Bailey." Nor did the officers of the Sovereign camp know of Mr. Bailey's condition until July 12, 1922, when they received the proofs of his death. On July 21st, nine days after receiving the proofs of death, the Sovereign officers returned the arrearages, refusing to accept same on the ground of Mr. Bailey's suspension. The time was reasonable, in view of the usual course of business of the order, and not an unreasonable delay of refusal. Not being in a position to know the facts concerning Mr. Bailey's sickness, there could not reasonably be imputed to the officers intentional relinquishment of the requirement of good health. In order to predicate a waiver of the requirement of good health, the officers must have known of his condition, and with this knowledge have nevertheless kept and retained the arrearages paid in; for one cannot be said to have waived that which he does not know. A waiver exists only where one with full knowledge of material facts does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right. 40 Cyc. p. 259, § 3. In other words, to warrant the

holding of waiver there must appear from the evidence that it was manifested in some unequivocal manner, and intentional, after knowledge of the fact. Mere knowledge that the arrearages were proffered for reinstatement would not be sufficient, since mere payment of arrearages was not all that was required in this case, in view of the laws of the order, which the insured would be bound to know. A further condition and essential prerequisite for reinstatement was that of "good health" at the time and continuing for "30 days thereafter." And there is no pretense that compliance with this condition was waived by any declaration, act, or conduct of its officers, or even by nonaction on their part from which an intention to waive may be reasonably inferred. Neither can estoppel be founded on the facts. The very essence of this doctrine is that the party relying upon the estoppel was misled to his prejudice by reason of the affirmative acts or conduct or representation of the other party, or by reason of the silence of the other party when in equity and good conscience he ought to have spoken. The acceptance of the arrearages for May by the clerk of the local camp, with no knowledge on the part of the clerk or the superior officers of the order that Mr. Bailey was ill and not in good health, did not constitute a false representation; nor was it an act inconsistent with the requirement of the order that a delinquent member must be in good health and must remain in good health for 30 days thereafter in order "to stand reinstated." The clerk did no more than receive the proffered money; he made no representations and did no act inconsistent with the present contention of the order that the insured was not in good health—a necessary condition for effective reinstatement. Although the clerk did not write in the receipt that it was agreement upon the condition of "good health," the law of the order did so, as Mr. Bailey would be held to know. It is true that the clerk might have demanded of Mr. Bailey a written warranty of good health, but this irregularity or failure to do so could not reasonably be construed as a waiver of the express requirement itself of "good health in fact," which is so explicitly set out in the fundamental laws of the order, which Mr. Bailey knew and which the clerk had no authority to waive.

[6, 7] The insured was bound to a knowledge of the fundamental laws of the order in respect to the right of reinstatement. Bennett v. Woodmen of the World (Tex. Civ. App.) 168 S. W. 1023; Splawn v. Chew, 60 Tex. 532; United Moderns v. Colligan, 34 Tex. Civ. App. 173, 77 S. W. 1032; and other cases. And the clerk of the local camp had no authority to waive the requirement of good health for reinstatement, or to waive any provision of the constitution and by-laws of the order. Section 82 of the constitution of

the order, quoted above, so provides. Article 4846 of the statutes of this state expressly authorizes a fraternal benefit society, as is appellant, to so provide in its laws. The article of the statute reads:

"The constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any provision of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

The local clerk, not otherwise knowing, had the right to assume that Mr. Bailey, knowing the condition for effective reinstatement, would not reasonably have attempted it unless he were in fact in good health. The failure even of the clerk to demand a written statement of health occasioned no injury to nor did it mislead Mr. Bailey. Mr. Bailey was unable, as he knew, to give such statement, since he was not in good health. The right was lost to him and he was barred of reinstatement in virtue alone of his condition of health. Circumstances must appear other than the mere receiving of dues in order to found estoppel in this case. The mailing of delinquent dues and assessment to the local clerk, and his receiving same, standing as a fact by itself, as it does, amounts to no more than an effort at reinstatement on Mr. Bailey's part which failed of its purpose on account of his illness at the time and of his death eight days thereafter.

There is no significance attaching to the fact that Mr. Bailey had at numerous times paid and the clerk received his delinquent dues. All of these payments were made within the period of time authorized by the laws of the order, as an absolute right of Mr. Bailey, and there is no pretense of any evidence that Mr. Bailey at any of the times was not in good health. No ill health was involved in any of the instances.

There is quite a distinguishment between this case and the cases cited, in view of the facts.

The judgment is reversed, and judgment is here entered in favor of appellant; the appellee to pay costs of the trial court and of this court.

On Motion for Rehearing.

It is believed that this case is different from, and not in conflict with, the cases of Maccabees v. Johnson (Tex. Civ. App.) 273 S. W. 612, and Sovereign Camp Woodmen of the World v. Hines (Tex. Civ. App.) 273 S. W. 927. In the Johnson Case as reported the question rested solely upon accepting dues paid by the insured after the prescribed time. The secretary of the local lodge "knew that Johnson (the insured) had been hurt" (and which injury resulted in his death) at the time he received and accepted the delinquent assessments from the insured. There was no

by-law requirement that the insured remain "in good health for 30 days" after the delinquent dues are paid. As held, the local secretary was the agent of the society, and there was waiver of prompt payment of assessments, precluding the society from setting up forfeiture of policy. In the Hines Case the local clerk received the delinquent assessments "and marked the receipt 'reinstated' and also entered the name of the deceased on his books as reinstated at the time, and that it was the intention of the local clerk to reinstate the insured." It also appeared "that deceased was sick at the time he tendered his dues on March 8, which was known to the local clerk at the time, and was also known to the local camp physician, Dr. L. Corley." As held, there was express waiver of the good health requirement, precluding the Sovereign Camp from asserting forfeiture. As stated:

"It was not, however, shown that there was any fraud or concealment on the part of the insured by which the clerk of the local camp was induced to accept said payment and to attempt to reinstate him. The clerk seems to have acted in good faith, relying on the fact that the Sovereign Camp had acquiesced in the custom theretofore in vogue with reference to reinstating members of said local camp without requiring evidence of good health at the time."

[8, 9] In the instant case, however, there was no "reinstatement" by the local clerk, and there was no "custom" of reinstating members without requirement of good health, and "the local clerk had no knowledge whatever of the condition of the health of the said Bailey." Mr. Bailey never informed the local clerk of his sickness. Further, there is no proof that in any instance the good health requirement was waived as to delinquent members. Therefore, under the facts as before decided, there is no waiver of the good health requirement, nor estoppel precluding the setting up of forfeiture of the policy.

The motion is denied.